**MARTY'S FLOOR COVERING CO., INC., Appellant,**

v.

**GAF CORPORATION, Appellee.**

**No. 78–1603.**

United States Court of Appeals, Fourth Circuit.

Argued June 4, 1979.

Decided July 19, 1979.

Christopher M. Kerns, Washington, D. C. (J. Thomas Burch, Jr., Leslie Yu Burch, Kerns & Klimek, Washington, D. C., on brief), for appellant.

John D. Field, III, Washington, D. C. (Catherine T. Porter, Leslie H. Wiesenfelder, Dow, Lohnes & Albertson, Washington, D. C., Edward D. Tanenhaus, Associate Counsel, GAF Corp., New York City, on brief), for appellee.

Before HALL and PHILLIPS, Circuit Judges, and DUMBAULD,* Senior District Judge.

* Edward Dumbauld, Senior United States District Judge for the Western District of Pennsylvania, sitting by designation.

DUMBAULD, Senior District Judge.

This private antitrust case is complicated by an issue concerning the propriety of the trial judge's participation in the case. The case was tried non-jury before Chief Judge Richard B. Kellam, of the Eastern District of Virginia, who found for defendant. The case involved purchase of tile by plaintiff from defendant. After losing the case, plaintiff sought a new trial and recusal of the judge, on the ground that almost 50 years ago the judge when working in his brother's law office had been one of the incorporators of Kellam & Eaton, Inc., a company doing business in Princess Anne (Virginia Beach) at the time of the trial, and owned by the judge's brother, and dealing in tile manufactured by defendant. The judge was an officer and director of Kellam & Eaton from 1930 to 1940. He never had any financial interest in the business.

Upon the filing of the motion for new trial and affidavit of prejudice, Judge Kellam recused himself from further participation in the case, which was assigned to Judge John A. MacKenzie. Judge MacKenzie held a hearing, at which he took the testimony of Judge Kellam, and after making appropriate findings of fact, concluded that "the motion for a new trial is absolutely devoid of any reason whatever," and denied the same.

Plaintiff in support of its motion relied on 28 U.S.C. 144 and 28 U.S.C. 455.

The former section provides:

Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for

failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

■ The issue under the above section is moot in the case at bar, since Judge Kellam's voluntary action afforded plaintiff all the relief which would have been obtainable under 28 U.S.C. 144: "such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding."

The usual procedure under this section is described as follows in *U. S. v. Nehas*, 368 F.Supp. 435, 437 (W.D.Pa.1973):

In accordance with the language of the statute, and cases construing it, the following procedure is to be observed. The filing of the affidavit does not itself automatically effect the ouster. Instead the legal sufficiency of the facts alleged (as distinguished from conclusionary assertions) must be passed upon by the target judge. He accepts as true the facts alleged, as on a common law demurrer, and determines merely their legal adequacy. He does not determine the truth of the allegations. In fact no one ever passes upon the truthfulness of the allegations. As stated by Judge Yankwich in *Cole v. Loew's Inc.*, 76 F.Supp. 872, 877 (S.D.Cal. 1948), "the truth of the affidavit cannot be adjudicated by the judge involved or anyone else." If the target judge finds them legally sufficient, *then* the disqualification is automatically effected. His determination is an interlocutory ruling reviewable on appeal along with other alleged errors in connection with the trial.

■ Only prospective relief is afforded by this section. It can not be used as a means of obtaining a new trial. Doubtless if the facts disclosed in a proceeding under the section showed such a lack of fundamental fairness as to vitiate the trial under the due process clause, a new trial could be had on constitutional grounds independently of 28 U.S.C. 144, but no such contention has been advanced in the case at bar.

Plaintiff's strongest point is the "Caesar's wife" principle embodied in 28 U.S.C. 455 (as amended in 1974):

> "Any . . . judge . . . shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."

None of the specific grounds for disqualification subsequently specified in 28 U.S.C. 455 have any pertinence to the case at bar.

■ But we are unable to conclude that the facts demonstrated here provide the slightest ground for reasonably questioning Judge Kellam's impartiality. He never had any financial interest in Kellam & Eaton. His connection as officer or counsel ceased in 1940. He had no knowledge that the company dealt in defendant's tile (such dealings amounted to only $1212.00 between February 1974 and May 1978). Without accepting Judge MacKenzie's characterization of the contention as something "that comes as close to being ridiculous . . . as anything I ever heard," it suffices to say that no adequate or substantial grounds for granting a new trial have been shown.

We pass, then, to the merits of the trial court's conclusions on the antitrust issues involved in the case.

Appellant's most plausible contention is that defendant's mode of doing business through Norman Deitch of Maryland, Inc. (Deitch) amounts to resale price maintenance in violation of Section 1 of the Sherman Act, 15 U.S.C. 1. But upon careful consideration of the facts in the case at bar, and penetrating form in search of substance, we conclude that the trial judge was correct in finding no antitrust violation here.

■ Resale price maintenance is of course a violation of the Sherman Act. *Dr. Miles Medical Co. v. Park & Sons Co.*, 220 U.S. 373, 404–408, 31 S.Ct. 376, 55 L.Ed. 502 (1911); *U. S. v. Parke, Davis & Co.*, 362 U.S. 29, 44–45, 80 S.Ct. 503, 4 L.Ed.2d 505 (1960). Cf. *U. S. v. General Electric Co.*, 272 U.S. 476, 488, 47 S.Ct. 192, 71 L.Ed. 362 (1926); and *Continental T. V., Inc. v. GTE Sylvania, Inc.*, 433 U.S. 36, 57, 97 S.Ct. 2549, 53 L.Ed.2d 568 (1977).

■ Superficially the record would support a finding that resale price maintenance exists. The parties stipulated that Deitch was "defendant's distributor" and that plaintiff was one of Deitch's "customers." Thus there was perhaps a technical transfer of title to the tile sold from defendant to Deitch and then from Deitch to plaintiff.[1] It is uncontested that defendant actually controlled and quoted the prices paid by plaintiff through defendant's sales representative Robert Spurgeon. Spurgeon continued to quote the prices after defendant began in May 1975 its arrangement with Deitch, just as he had in earlier years when plaintiff's purchases were made directly from defendant. The product continued to be shipped directly from defendant to plaintiff, and Deitch's billing was required to be in conformity with Spurgeon's quotations.

Looking to the substance of the parties' dealings rather than merely to form, it seems clear that defendant was in fact continuing to sell its tile to plaintiff and might properly quote the prices at which it wished to sell to plaintiff. As the trial court found, Deitch's function was "merely that of a factor or discounter." The trial court further found that "It is as though Deitch bought the contract between GAF and Marty's for a discount. The pre-1975 arrangement has been changed only to the extent that Deitch now does the billing." In other words, the situation resembles a purchase by Deitch of defendant's accounts receivable at a discount, from which it makes its profit when collections are received. The arrangement simply seems to be a matter of convenience, just as some banks with idle computer facilities undertake billing and

---

1. However, especially since *Continental T. V. Inc. v. GTE Sylvania, Inc.*, 433 U.S. 36, 52, 57, 97 S.Ct. 2549, 53 L.Ed.2d 568 (1977) one should be mindful of the comment of Justice Holmes that " 'Commerce among the several States' is a practical conception, not drawn from the 'witty diversities' (Yelv., 33) of the law of sales." *Rearick v. Pennsylvania*, 203 U.S. 507, 512, 27 S.Ct. 159, 160, 51 L.Ed. 295 (1906).

collection for drug stores and similar retail businesses not wishing to invest in expensive modern equipment.

Consequently we conclude that the charge of retail price maintenance is not substantiated.

Appellant's contentions under the Robinson-Patman Act fare no better. It is first asserted that defendant engaged in price discrimination in violation of 15 U.S.C. 13(a), which provides that:

It shall be unlawful . . . to discriminate in price between different purchasers of commodities of like grade and quality . . . where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them: *Provided* . . . That nothing herein contained shall prevent price changes from time to time . . . in response to changing conditions affecting the market . . .

■ The trial court's analysis of the evidence in the case at bar shows only trifling fluctuations from time to time between prices charged plaintiff and other purchasers from defendant. These normal responses to market conditions are far removed from the pattern of discriminatory practices in favor of chain stores and to the detriment of small shopkeepers which led to enactment of the Robinson-Patman Act.

As the trial court also emphasized, there was no sufficient proof of causation affecting competition on plaintiff's part. The price of tile is only a part of the total bid, and on many of plaintiff's bids installation of carpet was a major factor. As the trial court noted: "Certainly a rise in the cost of any ingredient used in making a finished product will have some effect on the cost of that finished product, and thus on competition. In this case, the Court believes there are too many other variables and possibilities involved to conclude that any discriminatory tile prices to Marty's have a reasonable probability of substantially lessening competition in this market." We agree.

Likewise the trial court's findings, which we are unable to say are "clearly erroneous" [FRCP Rule 52(a)], dispose of appellant's contention that defendant violated 15 U.S.C. 13(d), with respect to a cooperative advertising program.

That provision makes it unlawful

"to pay . . . for . . . anything of value to or for the benefit of a customer . . . unless such payment . . . is available on proportionally equal terms to all other customers competing in the distribution of such products or commodities."

■ The trial court found: "The plaintiff has offered no evidence whatsoever that GAF paid any of the plaintiff's competitors for yellow pages advertising, and so it has not met its burden of proof." [2] Plaintiff's other advertising expenses (for "help wanted"), did not fall within defendant's program. Thus the trial court concluded: "As none of plaintiff's advertising expenses were qualified under the defendant's plan, the plaintiff was entitled to no reimbursement from the defendant, and thus was not discriminated against." Any contradiction in the testimony regarding the extent to which ·defendant explained its advertising program to plaintiff was resolved by the determination of the trier of fact that "It was told of the program, and it was available. Nothing further was required."

■ Appellant's final contention on this appeal is that the trial court erred in failing to find that defendant was bound, either contractually or by estoppel, to protect quoted prices for the duration of the contracts entered into by plaintiff in reliance upon defendant's quotations.

---

**2.** If Deitch were paid for yellow pages advertising, there would be no violation since Deitch and plaintiff do not compete "on the same functional level." *FTC v. Fred Meyer Inc.*, 390 U.S. 341, 356, 88 S.Ct. 904, 19 L.Ed.2d 1222 (1968).

Here again any conflicts in the testimony must be deemed to have been authoritatively resolved by the findings made by the trier of fact. The evidence seems to show that during many years of the close relationship between plaintiff and defendant, when plaintiff used defendant's tile whenever the job specifications permitted, it was the policy of defendant to protect the prices quoted throughout the duration of the contract.

But, as in many facets of American life, the OPEC increase in the price of oil in 1973 raised its ugly head in the tile industry and necessitated disruption of the practices previously prevailing.

Spurgeon testified that he had notified his customers, including plaintiff, that in view of impending shortages and drastic price increases, price protection would be afforded only for six months, commencing on January 1, 1974. The trial court found that plaintiff admitted that defendant protected all existing contracts through the first six months of 1974, "but the evidence and plaintiff's actions establish there was no contract by GAF for any price protection after July 1, 1974, for it paid the increased price after that date without protest."

Accordingly, the trial court correctly concluded that defendant had fulfilled all its obligations with respect to price protection, and no basis for liability had been established by plaintiff with regard to this aspect of the case.

For the foregoing reasons, the judgment of the District Court is affirmed.