**Jay DUKE, Plaintiff,**

v.

**PFIZER, INC., UNITED DIVISION of PFIZER HOSPITAL PRODUCTS GROUP, and Jerome Mattioli, Defendants.**

Civ. A. No. 87–71177.

United States District Court,
E.D. Michigan, S.D.

Sept. 4, 1987.

Eric Lee Clay, Thomas Paxton, Lewis, White & Clay, P.C., Detroit, Mich., for plaintiff.

Joseph P. Marshall, III, Noel Massie, Elizabeth Hardy, Dickinson, Wright, Moon, Van Dusen & Freeman, Detroit, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER

FEIKENS, District Judge.

### Introduction

This is an opinion regarding a motion for a new trial. The motion has no substance and it is denied.

Plaintiff, having lost his case in a unanimous jury verdict, now seeks to have that trial set aside, claiming that I should not have presided at the trial.

In summary, this case—in which the principal claim is race discrimination—was fully and fairly presented to a jury. It was only after the unanimous jury verdict was returned in favor of defendants and against plaintiff that plaintiff raised the recusal issue.

Plaintiff is entitled to a fair trial; he received a fair trial, as the record will indicate. Thus, his claims of alleged partiality and error are without merit and moot.

### Background

Plaintiff, a black sales representative employed by defendant United Division of Pfizer, filed this action in Wayne County Circuit Court in which he alleged race discrimination. Fearing imminent termination and loss of his allegedly unvested pension benefits, plaintiff sought, and obtained, a temporary restraining order preserving his employment status.

The case was removed to the United States District Court for the Eastern District of Michigan and was assigned to me by blind draw on March 27, 1987. Although it was determined that plaintiff's pension benefits had vested,[1] I extended the temporary restraining order with the parties' consent and ordered that plaintiff's

---

1. "The Court: What about the matter of pension benefits? Have they vested?

 Mr. Clay: [W]e have been provided by defendant[s'] counsel with an affidavit stating that there was a change in pension rules as of January 1987 so that pension benefits could vest in five years [making plaintiff's benefits vested].

 The Court: So we can put the economic issues aside....

 Mr. Clay: That's precisely correct, your Honor."
 Tr. 4/16/87 at 6–7.

clients be notified that they could continue to address communications to him regarding defendant United Division's products. Because of the unusual posture of the case—the allegation of a constructive discharge without actual termination—I suggested, and the parties accepted, an early trial date following a short period for discovery. In the interim, with plaintiff's consent, defendants agreed to provide some job protection.

I recommended this "speedy trial" procedure to insure judicial economy. I did not want to try the case twice—once to determine whether a preliminary injunction should issue and then on the merits to a jury.

Trial commenced on May 18, 1987. Plaintiff was represented by Eric Clay and Thomas Paxton of the firm of Lewis, White & Clay; and defendants were represented by Joseph Marshall, Elizabeth Hardy, Noel Massie and C. Beth DunCombe of the firm of Dickinson, Wright, Moon, Van Dusen and Freeman. Beth DunCombe, while not counsel of record, was frequently in the courtroom during trial and conferred with defendants' counsel.

The case was completed in ten trial days. The jury, consisting of four white persons and two black persons, deliberated less than six hours and returned a verdict against plaintiff and in favor of defendants on all counts.

It was only after the verdict was returned that Messrs. Clay and Paxton made a motion for a new trial, claiming that I should have recused myself and that I should have notified them that members of the Dickinson, Wright firm had represented me on a prior occasion.

As to that matter, the facts are these. In August of 1984, I gave an interview, which was highly publicized, to a Detroit Free Press reporter. As a result of the interview, the Wolverine Bar Association, whose president at that time was George Ashford, a partner in the firm of Dickinson, Wright, filed a complaint against me with the Circuit Council of the United States Court of Appeals for the Sixth Circuit. Joseph Marshall and Beth DunCombe

of the Dickinson, Wright firm were also active, along with George Ashford, in filing the complaint.

Thomas Kienbaum (then President of the Detroit Bar Association) and John O'Meara, also partners in the Dickinson, Wright firm, volunteered to represent me before the Circuit Council. They explained to me that they felt they had an obligation, as members of the Bar, to assist me because they believed I had been unfairly accused in the Wolverine Bar Association's complaint. I accepted their offer.

The case was argued before the Circuit Council in December of 1984, and in March of 1985 the Circuit Council dismissed the complaint of the Wolverine Bar Association. Dickinson, Wright was not involved, as a firm, on either side of that matter. The lawyers named acted in their individual capacities.

The jury here returned its verdict on June 9, 1987. On June 26, 1987, Messrs. Clay and Paxton filed a Motion for New Trial alleging, *inter alia*, that it was error on my part, citing 28 U.S.C.A. §§ 144, 455(a) and 455(b), not to disclose my past "attorney-client relationship with the firm of Dickinson, Wright, Moon, Van Dusen and Freeman," and not to recuse myself. Plaintiff's Motion for New Trial at 16. They argue that my failure to recuse myself and the commission of several alleged errors during the trial entitle plaintiff to a new trial.

I note at the outset that I have both the duty and jurisdiction to decide this motion. The court in *Chitimacha Tribe of Louisiana v. Harry L. Laws Co.*, 690 F.2d 1157, 1162 (5th Cir.1982), noted that the practice of transferring recusal motions to another judge "has been permitted in the past ... [but] is not to be encouraged. The challenged judge is most familiar with the alleged bias or conflict of interest.... [R]ecusal motions should only be transferred in unusual circumstances."

Judge Sirica's ruling in the "Watergate" case represents the current thinking on the issue: "A judge challenged under these [recusal] statutes ought to be willing to

shoulder the responsibility of ruling in the matter.... If the judge errs in his determination, the proper remedy is in appellate review." *United States v. Mitchell*, 377 F.Supp. 1312, 1315 (D.D.C.1974), *aff'd*, 559 F.2d 31 (D.C.Cir.1976), *cert. denied*, 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977). *See United States v. Professional Air Traffic Controllers*, 527 F.Supp. 1344, 1351 (N.D.Ill.1981); *see also United States v. Studley*, 783 F.2d 934, 940 (9th Cir.1986).

## I. THE RECUSAL ISSUE

28 U.S.C. § 455(a) (1987) provides:

Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

The phrase "might reasonably be questioned" has been defined to mean: might be questioned by *"a reasonable person knowing all the relevant facts"* and circumstances. *Roberts v. Bailar*, 625 F.2d 125, 129 (6th Cir.1980) (emphasis supplied). The judge's duty under § 455(a) is to be exercised *sua sponte* and is not triggered by motion of a party or counsel. *See Roberts*, 625 F.2d at 128 n. 8.

While the 1974 amendment to § 455(a) eliminated the former "duty to sit" concept and changed the subjective standard to an objective one, it preserved some measure of judicial discretion in the matter: "The issue of disqualification is a sensitive question of assessing all the facts and circumstances in order to determine whether the failure to disqualify was an abuse of sound discretion." 3 U.S.Code Cong. & Admin.News (1974) pp. 6351, 6355. *Cf. Potashnick v. Port City Construction Co.*, 609 F.2d 1101, 1112 (5th Cir.1980), *cert. denied*, 449

U.S. 820, 101 S.Ct. 78, 66 L.Ed.2d 22 (1980) ("The amendment of 28 U.S.C. § 455 did not alter the standard of appellate review on disqualification issues...."); *United States ex rel. Weinberger v. Equifax, Inc.*, 557 F.2d 456, 464 (5th Cir.1977) (standard on review is still abuse of discretion).

 I exercise my discretion and I find that there is no appearance of partiality to a reasonable person knowing the following facts: first, that individual members of the Dickinson, Wright firm were on both sides of the complaint filed against me in 1984; and second, that there was a greater than two-year period of repose between the representation of me by Messrs. Kienbaum and O'Meara and the initiation of this case. I am aware of no case that requires a judge to stand aside *a priori* under similar facts.[2]

Where there is no appearance of partiality, "the dignity of the bench, the judge's respect for the fulfillment of his judicial duties, and a proper concern for his judicial colleagues, all require that the judge *not* recuse himself." Advisory Comm. on Judicial Activities, Op. 52 (1977) (emphasis in original).

### A. *Dual Representation*

What is important in a judge's consideration of recusal is not whether the individual judge concludes that he is able to sit impartially but whether it reasonably appears to the public that the judge can preside impartially. H.R.Rep. No. 93–1453, 93d Cong., 2d Sess. at 5–6 (1974) *reprinted in* U.S. Code Cong. & Admin.News 6351, 6355; Code of Judicial Conduct for United States Judges Canon 2 (Rev.1986).[3] This is crucial

---

**2.** Plaintiff relies on *Smith v. Sikorsky Aircraft*, 420 F.Supp. 661 (C.D.Cal.1976), as authority for the proposition that a judge must recuse himself whenever a lawyer who once represented the judge is affiliated with a firm appearing in court. But, there, Judge Hauk disqualified himself under the canons and there is no intimation in the opinion that a judge must disqualify himself under those circumstances. *See United States v. Conforte*, 457 F.Supp. 641, 656 (D.Nev. 1978), *aff'd*, 624 F.2d 869 (9th Cir.1980), *cert. denied*, 449 U.S. 1012, 101 S.Ct. 568, 66 L.Ed.2d 470 (1980).

Plaintiff also relies on several other cases for the same proposition. *See, e.g., Potashnick, supra* at 1110. But, those were all cases under § 455(b) where the aroma of an appearance of partiality was pungent. *See, e.g., Roberts, supra* at 127 (judge remarked that defendant charged with employment discrimination was "an honorable man and I know he would never intentionally discriminate against anybody.").

**3.** It should be noted, though, that while there is no longer a subjective "duty to sit" under § 455, "unwarranted recusal may bring public disfavor to the bench and to the judge himself." Advisory Comm. on Judicial Activities, Op. 52 (1977).

because the public's respect for, and faith in, the fairness of the court system rests on a judge's scrupulous dedication to maintaining the appearance, as well as the fact, of impartiality.

A reasonable person, knowing that individual members of Dickinson, Wright assisted me in a previous matter and that individual members of Dickinson, Wright had also filed and pursued a complaint against me in 1984, would not question my impartiality in this case.

What must be said is that the alleged appearance of partiality was only an apparition—not a true appearance of partiality. This conclusion flows from the simple fact that the very lawyers who filed a complaint against me with the Sixth Circuit Council in 1984 were the lawyers who won this case.

### B. *Period of Repose*

Whatever view one might have on this matter, the two-year period of repose between Messrs. Kienbaum and O'Meara's representation of me and the Dickinson, Wright firm's activity in this case would vitiate that problem.

Regarding the intimate relationship between a judge and his law clerk, the prevailing view is that a one- or two-year period of repose is enough to cure any possible appearance of impropriety. *See* A. DiLeo & A. Rubin, Law Clerk Handbook 57 (1977). *See also Smith v. Pepsico, Inc.*, 434 F.Supp. 524, 525–526 (S.D.Fla.1977) (two-year repose after a two-year clerkship is enough); *United States v. Hollister*, 746 F.2d 420, 426 (8th Cir.1984) (one-year repose recommended but not abuse of discretion to refuse recusal after only three-month repose); Sup.Ct. Rule 7 (1987) (two-year repose); *cf. Bumpus v. Uniroyal Tire Co. Div. of Uniroyal, Inc.*, 385 F.Supp. 711, 714 (E.D.Pa.1974) (two years for former law partner). Here, the complaint against me was dismissed by the Circuit Council on March 11, 1985 and this case was assigned to me on March 27, 1987—more than two years later. There is no good reason for requiring a longer period of repose for a lawyer who once represented a judge, or proceeded against him, than for a law clerk who worked with a judge more than two years prior to appearing before that judge.

The recusal result for which plaintiff argues would bar lawyers who once represented a judge, as well as former law clerks, from the judge's court forever: that rule has difficult implications and should not be adopted. Members of the Bar are duty-bound to represent judges accused unfairly of judicial misconduct. Messrs. Kienbaum and O'Meara, as members and/or officers of the Detroit Bar Association, acted pursuant to this duty in representing me. Messrs. Ashford and Marshall and Ms. DunCombe, as members of the Wolverine Bar Association, complained against my statements to the Free Press pursuant to their legitimate duty to secure a race-neutral judicial system. Neither set of lawyers, nor their firm, should be forever barred from appearing before me simply because they executed their respective duties as attorneys. To penalize lawyers in this way would be a disincentive to representing judges and a disincentive to championing important social concerns about judicial decision-making. This chilling effect would have the strongest impact in one-judge districts but it is, nonetheless, a substantial consideration in a metropolitan setting.[4]

### C. *Alleged Personal Bias*

28 U.S.C. § 144 provides:

Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

The affidavit shall state the facts and the reasons for the belief that bias or

---

4. A lawyer or law firm representing the only judge in the district would have to bring all of his [its] future cases in another district under the hypothetical rule suggested by implication in plaintiff's argument.

prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

As to § 144, a trial judge's duty regarding a recusal motion is to take the facts alleged in a movant's affidavit as true, *U.S. v. Story*, 716 F.2d 1088, 1090 (6th Cir.1983), and to examine the timeliness and legal sufficiency of the motion. The judge must recuse himself if the motion is timely and sufficient (regardless of available proof contradicting the "facts" sworn to by the moving party) and if the facts alleged reasonably suggest bias. *Story, supra; Berger v. United States*, 255 U.S. 22, 36, 41 S.Ct. 230, 234, 65 L.Ed. 481 (1921). Here, I am not bound by the omission in the affidavits of the fact that members of Dickinson, Wright were active in bringing the 1984 complaint against me.[5]

Section 144 also requires the moving party to file a signed affidavit alleging *personal* bias of an extrajudicial source. Here, the motion is insufficient because counsel, not Mr. Duke, signed the affidavits. *Roberts v. Bailar*, 625 F.2d 125, 128 (6th Cir.1980), requires that I deny the motion on this ground.

Mr. Clay argues that the alleged bias is in favor of the Dickinson, Wright attorneys—not in favor of, or against, a party. Assuming that this would allow an attorney's affidavit alone to satisfy § 144 requirements, the facts would still have to persuade a reasonable person of the apparent bias. *See Roussel, supra.* As I have already stated, there is no appearance of partiality or bias under the facts in this matter. Thus, I had no duty to disclose the past representation by Messrs. Kienbaum and O'Meara, nor have I a duty to recuse myself pursuant to plaintiff's motion.

D. *Alleged A Priori Appearance of Impropriety—§ 455(b)*

Section 455(b) sets out certain fact situations in which the appearance of partiality to the public is so strong that a judge must disqualify himself *sua sponte.* In other words, Congress has determined that "the appearance of impropriety test" is satisfied automatically in the enumerated situations. The § 455(b) situations are:

(1) Where [the judge] has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

(2) Where in private practice he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it;

(3) Where he has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy;

(4) He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding;

(5) He or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:

(i) Is a party to the proceeding, or an officer, director, or trustee of a party;

---

**5.** While facts alleged in the affidavit must be accepted as true, there is no requirement that a judge limit his consideration of recusal to an incomplete set of alleged facts. The danger in that practice would be similar to the one warned of by Judge Gee in *Parrish v. Board of Commissioners of Alabama State Bar*, 524 F.2d 98, 106 (5th Cir.1975) (Gee, J., concurring): "There is ... no need to discern in § 144 a rule by which a party who really wants to do so ... can at pleasure disqualify any federal judge in a given proceeding by presenting to him a spurious set of ex parte 'facts' which he [the judge] cannot question...." *Accord Roussel v. Tidelands Capital Corp.*, 438 F.Supp. 684, 691 (N.D. Ala.1977); *Berger, supra*, 255 U.S. at 40, 41 S.Ct. at 235 (Day, J., dissenting).

(ii) Is acting as a lawyer in the proceeding;

(iii) Is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding;

(iv) Is to the judge's knowledge likely to be a material witness in the proceeding.

28 U.S.C. §§ 455(b) (1987).

None of the facts here are within any of the § 455(b) requirements.

### E. *Failure To Recuse As Ground For New Trial*

■ A new trial cannot be obtained on the sole basis that a judge should have recused himself. *See, e.g., Marty's Floor Covering Co. v. GAF Corp.*, 604 F.2d 266, 268 (4th Cir.1979), *cert. denied*, 444 U.S. 1017, 100 S.Ct. 670, 62 L.Ed.2d 647 (1980) ("Only prospective relief is afforded by this section [144]. It can not be used as a means of obtaining a new trial."). *Cf. United States v. Murphy*, 768 F.2d 1518, 1540 (7th Cir.1985) (same rule in criminal law context).

■ In considering plaintiff's motion for new trial, the proper inquiry is whether plaintiff was unfairly prejudiced by some error at trial. *Margoles v. Johns*, 660 F.2d 291, 296 (7th Cir.1981), *cert. denied*, 455 U.S. 909, 102 S.Ct. 1256, 71 L.Ed.2d 447 (1982). This can be done through appellate procedure.

## II. THE PREJUDICIAL ERRORS ISSUE

### A. *Admission of Impeaching Evidence*

■ Plaintiff alleges prejudicial error in the trial because of the admission of extrinsic evidence used to impeach him. Specifically, plaintiff objects to the admission of his tax returns, evidence of his various name changes, and a copy of a loan application he once made.

He argues that Fed.R.Evid. 608(b) prohibits the admission of extrinsic evidence for impeachment purposes. This is not so. Where, as here, a witness's credibility is in question, Rule 608(b) is violated only when extrinsic evidence is admitted after the witness denies the contents. *Carter v. Hewitt*, 617 F.2d 961, 970 (3d Cir.1980). Mr. Duke did not deny the validity of the tax returns, the name changes, or the fact that he filled out the loan application.

Since these facts were not disputed, in my discretion I admitted relevant documents proffered by defendant. *See Aaron v. United States*, 397 F.2d 584, 585–586 (5th Cir.1968) ("The trial judge is in the best position to determine the effect that such improper evidence may have had on the jury, and except where there is a clear abuse of discretion in this regard a new trial will not be granted."). *Cf. also Lyda v. United States*, 321 F.2d 788, 793 (9th Cir.1963) ("The issue is whether the use of false names bears directly enough upon the witness' veracity as to outweigh the general prohibition against cross examination about particular acts of misconduct.... We think it does. If a man lie[s] about his own name, might he not tell other lies?").

### B. *Admission of Summary Evidence*

■ Plaintiff next argues that I erred, citing Fed.R.Evid. 701, in allowing testimony as to a chart prepared by a lay witness, John Hamilton, on his home computer. But, plaintiff waived his objections to the testimony on the record.[6]

Plaintiff says I erred in admitting the chart into evidence. I specifically cited Fed.R.Evid. 1006 before admitting the chart.[7] Plaintiff mistakenly asserts that under Rule 1006, the evidence that the summary is based on must be "made available for examination and copying by the opposite party *before* the trial." Plaintiff's Supplemental Brief in Support of His Mo-

---

6. "Mr. Paxton: So we're clear, we're not objecting to his [Hamilton's] testimony but the charts." Tr. 6/2/87 at 8.

7. "The Court: I call your attention, Mr. Paxton, to Rule 1006, because I think 1006 says volu-

minous documents may be presented in the form of a chart or calculations. This seems to me to be that." Tr. 6/2/87 at 36.

tion for New Trial at 5 (emphasis in original). Rule 1006 states:

> The contents of voluminous writings, recordings, examined in court may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for examination and copying, or both, by other parties at *a reasonable time and place.* The court may order that they be produced in court.

Fed.R.Evid. 1006 (1987) (emphasis supplied).

■ It is clear that summaries of voluminous material can be admitted if accurate and not unduly prejudicial. *United States v. Scales,* 594 F.2d 558, 561 (6th Cir.1979), *cert. denied,* 441 U.S. 946, 99 S.Ct. 2168, 60 L.Ed.2d 1049 (1979). It is equally clear in this circuit that "[t]he admission of summaries under Rule 1006 is committed to the sound discretion of the trial court." *Gomez v. Great Lakes Steel Div. Nat'l. Steel Corp.,* 803 F.2d 250, 257 (6th Cir.1986). The suggested inquiry under *Gomez* is whether the summary is a concise presentation of voluminous, admissible documents (in which case the summary is admissible) or a pedagogical device for argument (in which case it is not admissible). Here, the summary was represented, and used, as a simple summary of plaintiff's sales performance compared to other sales representatives based on documents already in evidence.[8]

### C. Permission of Testimony Pursuant to Witness Sequestration Rule

■ At the beginning of this case, I ordered that witnesses be sequestered. Plaintiff now alleges I allowed one of defendants' witnesses to testify in violation of the sequestration order.

Plaintiff objected at trial to the testimony of Chip Gamble who, defendants' attorneys admitted, had read 43 pages of a "daily copy" trial transcript involving the testimony of another of defendants' witnesses. I prohibited defendants from examining Mr. Gamble on any of the issues dealt with in the 43 pages of transcript read except for a question raised in another context. Tr. 6/2/87 at 95–96. I stated I would consider the admissibility of that question outside the hearing of the jury. I excused the jury when the question was asked in order to hear plaintiff's objection. The only objection plaintiff made, however, was that I should presume Mr. Gamble read more than the 43 pages he said he had read. Tr. 6/2/82 at 103–108.

I did not err in allowing Mr. Gamble to testify to matters not contained in the portion of transcript he read.

### D. Racial Slurs as Direct Evidence of Discrimination

■ Plaintiff claims it was error not to give his proposed jury instruction that racial slurs are direct evidence of discrimination. While racial epithets and the like certainly are some indicia of racial animus, the cases plaintiff cites do not establish that racial slurs are direct evidence of discrimination. *See, e.g., Brewer v. Muscle Shoals Bd. of Educ.,* 790 F.2d 1515, 1521 (11th Cir.1986) (proof of racial slur intimated racial animus but led court to say only: "We cannot say that the district court's finding of intentional discrimination is clearly erroneous.").

In any event, failure to give the proposed instruction did not prejudice plaintiff. A reasonable jury would have assumed discriminatory intent had it believed that any of the racially derogatory statements plaintiff complained of were in fact uttered. But, there is no rule of law that a racial slur is direct evidence of discrimination. Therefore, giving an instruction to that effect would have been inappropriate.

■ In addition, plaintiff waived this objection by not placing it on the record following my charge to the jury.

### E. Directed Verdict on Intentional Infliction of Emotional Distress Claim

Plaintiff claims error in my grant of defendants' motion for directed verdict on

---

**8.** *See* Tr. 6/2/87 at 37–38.

plaintiff's intentional infliction of emotional distress claim.

■ I know of no Michigan case in which plaintiff prevailed on a claim of intentional infliction of emotional distress. While courts applying Michigan law have preferred to find that the facts do not rise to the standard prescribed by the Restatement 2d. of Torts, *see Coogan v. City of Wixom*, 820 F.2d 170, 173–174 (6th Cir. 1987); *Polk v. Yellow Freight Sys., Inc.*, 801 F.2d 190, 195–197 (6th Cir.1986); *Warren v. June's Mobile Home Village and Sales, Inc.*, 66 Mich.App. 386, 239 N.W.2d 380 (1976), the fact remains that the Michigan Supreme Court has not yet adopted that claimed tort as a cause of action. *See Roberts v. Auto-Owners Ins. Co.*, 422 Mich. 594, 374 N.W.2d 905 (1985):

> [I]t is clear that the tort of intentional infliction of emotional distress has gained widespread acceptance, in a variety of factual contexts, in the courts of our sister states.... [But] our review ... of the policy implications for adopting this tort ... must await a case in which those concerns are necessarily presented.

*Roberts*, 422 Mich. 594 at 611, 374 N.W.2d 905 (Boyle, J.).

■ It would have been improper for me, in a diversity case, to have allowed the intentional infliction of emotional distress claim to go to the jury since the state's highest court does not recognize that cause of action. I note, too, that plaintiff could have received damages (for humiliation, indignity, mortification, and the like) had he prevailed on the race discrimination claim. In any event, the testimony regarding intentional infliction of emotional distress did not rise to the required egregious level, and thus a directed verdict was proper.

### F. *Plaintiff's Burden of Proof in Wrongful Discharge Actions*

■ Plaintiff argues that I erred when I instructed the jury that plaintiff carries the ultimate burden of proof in a wrongful discharge claim under *Toussaint v. Blue Cross & Blue Shield of Michigan*, 408 Mich. 579, 292 N.W.2d 880 (1980). The issue involves a tension between decisions of two Michigan Court of Appeals panels. *Compare Rasch v. City of East Jordan*, 141 Mich.App. 336, 340–341, 367 N.W.2d 856 (1985) ("The burden of proof is upon plaintiff to prove his contract and its performance up to the time of discharge; the burden then shifts to the defendant to show a legal excuse for [plaintiff's] discharge."), *with Obey v. McFadden Corp.* 138 Mich.App. 767, 776–779, 360 N.W.2d 292 (1984), *lv. denied*, 422 Mich. 911 (1985) (approving instruction that plaintiff had burden of proof at every step and holding that defendant was entitled to judgment *non obstante veredicto* because plaintiff failed to prove lack of just cause for termination).

I accept the premise that after plaintiff makes a prima facie showing that a *Toussaint* contract exists, the burden of production shifts to defendant to come forth with some evidence that just cause existed to terminate plaintiff. Such a rule shifting intermediary burdens of production accords *Toussaint* plaintiffs the same procedural protection as plaintiffs in employment discrimination contexts. *See Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The rule plaintiff excises from *Rasch, supra*, would place a lighter burden on employers accused of race discrimination than employers faced with wrongful discharge claims. Such a rule is counterintuitive and makes little sense in light of the relatively greater protections the law has tried to provide alleged victims of race discrimination.

■ As a practical matter, any error in the *Toussaint* burden of proof instructions is harmless because the jury, by finding no cause of action on the race claim, impliedly found that there was a legitimate or just cause for plaintiff's termination. This, coupled with the fact that plaintiff failed to object to the instruction, compels the conclusion that there was no prejudicial error requiring a new trial.

### G. *Inapplicability of the Continuing Violation Doctrine*

■ Plaintiff argues that I erred when I instructed the jury not to consider events

or damages occurring more than three years prior to the filing of the complaint. He argues that the facts here justify application of the "continuing violation" theory, under which the statute of limitations can be tolled.

I gave the instruction-in-question based on two determinations. First, Michigan's three-year limitation of actions period, M.C.L. § 600.5805 (1987), applies to actions under the Elliott-Larsen Civil Rights Act and to § 1981 actions brought in Michigan. *Richards v. I.B.M. Corp.*, 504 F.Supp. 1369, 1371 (E.D.Mich.1981). Second, I ruled that the "continuing violation" doctrine did not apply here.

The continuing violation doctrine effectively extends the statute of limitations for employment discrimination cases in certain situations. There are three scenarios in which courts have traditionally applied the doctrine: First, when plaintiff is harmed pursuant to a continuous, unlawful policy of discrimination, the limitation period extends back through the life of the discriminatory policy. *Roberts v. North Am. Rockwell Corp.*, 650 F.2d 823, 826 (6th Cir.1981). Second, an employer's behavior is viewed as "continuing" when that employer subjects plaintiff to a series of discrete, similar acts, constituting a pattern or practice of discrimination. *Sumner v. Goodyear Tire & Rubber Co.*, 427 Mich. 505, 528, 398 N.W.2d 368 (1986). Third, courts used to apply the continuing violation doctrine to neutral acts that perpetu-

ate the effects of long past discrimination. This latter category was eliminated by the Supreme Court in *United Air Lines v. Evans*, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977). There, plaintiff, a stewardess, was fired pursuant to the employer's requirement that stewardesses be single. After the Supreme Court rejected this type of policy in another case, plaintiff was rehired—but, without credit for the seniority she had accumulated before being fired earlier. The Court held that, although the refusal to recognize plaintiff's accumulated seniority exacerbated a lingering effect of the past discrimination, the continuing violation theory was inapplicable because there was no unlawful act committed within the statutory period.

Here, the facts do not trigger application of the continuing violation doctrine. Plaintiff did not allege a longstanding company policy of race discrimination. Nor was he able at trial to connect the alleged discriminatory acts of February 11, 1987 and beyond to the remote acts involving colleagues' racial "jokes" and non-race-related alleged interrogations by supervisors. There is, thus, no allegation of a pattern or practice of discrimination. Equally, plaintiff was not entitled to the benefit of any other limitation-extending theory.[9]

### H. Propriety of the Jury Verdict

Finally, plaintiff asserts he is entitled to a new trial because the verdict is against the great weight of the evidence.

**9.** *Macklin v. Spector Freight Systems, Inc.*, 478 F.2d 979 (D.C.Cir.1973), a case not cited by either party, suggests means other than the continuing violation theory for recovering damages beyond three years in a 1981 employment discrimination context. There, the United States Court of Appeals for the District of Columbia overturned the district court's dismissal of plaintiff's complaint. Plaintiffs alleged that the layoff of black truckers and the retardation of union grievance proceedings stemmed from defendant's continuing discriminatory policy of denying blacks over-the-road driver jobs.

Specifically, the court recognized two alternative theories of over-three-year recovery:

Even if the statute of limitations were deemed tolled only with the filing of this case in District Court ... it does not necessarily follow that the damage relief which appellants might receive in their suit would be restricted to the economic harm and other damages

they suffered in the 3 years prior to the beginning of the District Court action.... In some cases, ... it may take time for the damage to occur, ... or, alternatively, a plaintiff may be understandably unaware that the disadvantage he suffers is the product of wrongful behavior....

478 F.2d 979 at 995 n. 30 (citations omitted).

Footnote 30 in *Macklin* comports with the method by which the tort statute of limitations in Michigan commences. *See City of Huntington Woods v. Wines*, 122 Mich.App. 650, 652, 332 N.W.2d 557 (1983) (period begins to run when plaintiff "knows of the act which caused his injury and has good reason to believe that the act was improper or done in an improper manner."). Here, plaintiff makes no claim that he was unaware of the gravity of the alleged acts at the time they were committed or that the effects took time to materialize.

I listened carefully to all the evidence presented to the jury. While the jury might have found in plaintiff's favor, I hold that there was substantial evidence in defendants' favor for the jury to have found for defendants in a verdict of no cause of action.

*Conclusion*

For the foregoing reasons, Plaintiff's Motion for New Trial is DENIED.

IT IS SO ORDERED.