**UNITED STATES of America, Plaintiff,**

v.

**David K. GUARDIA, M.D., Defendant.**

**No. CR 96–244 BB.**

United States District Court,
D. New Mexico.

Feb. 6, 1997.

---

Tara C. Neda, Albuquerque, NM, for Plaintiff.

Charles W. Daniels, Nancy Hollander, Albuquerque, NM, for Defendant.

### AMENDED MEMORANDUM OPINION AND ORDER [1]

BLACK, District Judge.

THIS MATTER is before the Court on *Defendant's Motion in Limine to Preclude Admission of Uncharged Allegations Under Rules 403, 404(B) or 413.* This Court heard oral argument and received proffers of evidence on August 28, 1996. The Court concluded that since weighing the prejudice of such evidence against its probative value was in large measure context specific, rulings would be reserved until trial. Both sides were dissatisfied with this position and urged a pretrial decision on the admissibility of the testimony of four non-prosecuting witnesses who would testify that they believed Defendant had touched them inappropriately. At the urging of the parties, then, the Court heard additional oral argument on December 30, 1996, and (1) GRANTED Defendant's motion in limine of the Rule 413 testimony, pursuant to its Rule 403 discretion, (2) determined the Government's motion to preclude testimony regarding past sexual abuse of the Rule 413 witnesses to be MOOT, (3) declared Defendant's motion to subpoena additional medical records of the Rule 413 witnesses, as

---

1. Pursuant to Rule 36 of the Federal Rules of Criminal Procedure, minor typographical and technical changes were made in this opinion between the time it was originally filed on January 3, 1997, and its publication.

well as the witnesses themselves, to be MOOT, (4) GRANTED the Government's motion in limine to exclude evidence of Defendant's "good conduct" regarding the other patients interviewed by the FBI, and (5) determined Defendant's motion for additional discovery on the names and addresses of all Defendant's prior patients MOOT.

### Discussion

The case began as a result of a complaint made by Carla G., a patient at the Kirtland Air Force Base Hospital, where Defendant, Dr. Guardia, worked as a gynecologist on contract through his employer, the UNM Hospital. After several visits, Ms. G. complained about the way Defendant performed medical procedures and the things he said during and after examinations. As a result of Ms. G.'s complaint, the FBI began contacting Defendant's prior Kirtland patients. One of the many patients that Defendant had treated, Francesca L., indicated to the FBI inquiry that she also thought Defendant's behavior during her examination was sexual and inappropriate. Based on the complaints of these two women, the Grand Jury returned a six-count Indictment against Defendant for criminal sexual penetration and simple battery.

During discovery, the Government indicated it had learned of other women who felt Defendant's examinations were inappropriate and that the Government would subpoena these women to testify regarding Defendant's behavior during his examinations of each of them. Counsel for Defendant indicated that since a chaperone was present during the examination of at least two of these women, the chaperones would be called to testify for the defense. Moreover, both counsel indicated that substantial expert testimony would be offered as to the medical justification for the specific medical procedures and/or techniques to which each of these women objected and how the ethical rules of various medical associations would apply. Defense counsel also indicated areas of cross examination she would raise regarding some of the non-prosecuting witnesses' gynecological and pharmacological histories, in an attempt to explain why they might be uncomfortable with, or misperceive, the actions of a male gynecologist.

■ Although the Judicial Conference Committee originally proposed Federal Rules of Evidence 413 to 415 in February 1994, the present version of these Rules is not directly related to the 1994 proposal. Michael H. Graham, 1 *Handbook of Federal Evidence* § 413.1 at 489 (1996) [Graham]. Rather, these Rules arose out of congressional debate on the Violent Crime Control and Law Enforcement Act of 1994, Pub.L. No. 103–322, 108 Stat. 1796, 2135–37 (1994). *United States v. Roberts,* 88 F.3d 872, 876 (10th Cir.1996); Charles A. Wright & Kenneth W. Graham, Jr., 23 *Federal Practice and Procedure* § 5411 (Supp.1996) [Wright & Miller]. There was initially some debate on whether and how these Rules would be construed in conjunction with Rules 403 and 404. *See, e.g.,* Stephen A. Saltzburg *et al.,* 1 *Federal Rules of Evidence Manual* at 577–78 (1995); Mark A. Sheft, *Federal Rule of Evidence 413: A Dangerous New Frontier,* 33 Am.Crim.L.Rev. 57, 67 (1995). A common sense reading of Rule 403, however, indicates that since it applies only to evidence otherwise admissible, it applies to evidence otherwise admissible under Rule 413. *Cf.* Glen Weissenberger, *Federal Evidence,* ch. 413 at 414 (Supp.1996/7) (unlikely Rule 413 was intended, or will be interpreted, to negate Rule 403). This also appears to be the developing consensus of judges, lawyers, and legal scholars. *See, e.g., Manual of Model Criminal Jury Instructions for the District Courts of the Eighth Circuit* § 2.08, Committee Comments (1996) ("It is the opinion of the Committee that, in an appropriate case, evidence otherwise admissible under Rules 413 and 414 may be excluded under Rule 403 if the danger of unfair prejudice or confusion of the issues substantially outweighs the probative value of the evidence."); Graham, § 413 at 496, 498 (congressional sponsors did not intend to make Rule 403 inapplicable); Wright & Miller, § 5417 ("Rule 413 substitutes an 'opposite' presumption [than Rule 404(b)] but it does not alter the power of courts to exclude the evidence where on the facts of the case this is justifiable under Rule 403."); Stephen S. Strong, *What is a Plan? Judicial Expansion of the Plan, Theory of Mili-*

*tary Rule of Evidence 404(b) in Sexual Misconduct Cases,* 1992 Army Law. 13, 22 (June 1992) (language of Rule 413(c) makes Rule 403 applicable). Congress, then, intended Rule 413 to reverse the presumption against prior bad acts found in Rule 404(b) and this is likely to result in less evidence being excluded under the balancing test of Rule 403. Saltzburg, *supra;* Weissenberger, *supra; cf. Roberts,* 88 F.3d at 876 ("Rule 413 provides a specific admissibility standard in sexual assault cases, replacing Fed.R.Evid. 404(b)'s general criterion.").

This Court, however, has been unable to find any congressional history or legal authority to support the premise that Rule 413 is intended to substantially lengthen trials or require additional expert testimony. Based on the briefs, proffers, and oral arguments of counsel, this Court is persuaded that the additional four witnesses the Government proposes to call under Rule 413 add little probative value to the testimony of the two prosecuting witnesses but have the definite potential to confuse the jury and unnecessarily extend the trial.

■ The two complaining witnesses whose testimony was presented to the Grand Jury, Carla G. and Francesca L., described Defendant's alleged inappropriate conduct in massaging the clitoris during his examinations. The Government further proffers Francesca L.'s testimony that while smiling, Defendant told her, "I love my job."

Initially, the Court notes that the tendered Rule 413 witnesses will interject confusingly similar, but potentially distinguishable, legal issues into the trial. For example, one of the Rule 413 witnesses, Patricia N., reported that Defendant fondled her breasts without a chaperone present and subsequently informed her that he had "enjoyed" the experience. Another Rule 413 witness, Michelle A., reported that Defendant fondled her breasts, hips, and buttocks without gloves, asking Mi-

chelle A. if she was "having fun." Neither of the original complaining witnesses reported anything related to fondling of the breasts or buttocks.[2] In the ordinary trial, if the jury believed a defendant touched a victim in these private places, an assault would be established. In the context of an ostensible medical examination, however, additional prosecution or defense expert testimony would be required on these collateral matters to establish the appropriate procedure for breast and rectal examinations by a gynecologist.

Another Rule 413 witness, Renee C., while also alleging inappropriate clitoral touching, was seen for a pap smear following laser treatment. Again, different expert testimony relating to appropriate follow-up to laser surgery will be required. The fourth witness, Juli H., also had a biopsy. This is an issue which is the focal point of her complaint, and again will necessitate expert testimony. Moreover, in the case of at least two of the Rule 413 witnesses, chaperones were present, so the events at issue were likely witnessed. As such, a swearing match between at least three persons may be required to establish the factual predicate for such expert testimony.[3] This would essentially create a trial within a trial with regard to allegations by non-prosecuting witnesses, related to actions for which Defendant is not charged.

Most significantly, however, this case involves a highly limited and unusual form of "sexual assault." Indeed, unlike virtually every other form of such conduct, the jury will be unable to determine the propriety, much less the legality, of most of the conduct which forms the basis of the charges without the aid of expert testimony. In the usual case, once the jury has resolved the credibility issues, it can decide whether the sexual act was consensual or criminal. In the present case, the manual contact was consensual but only expert testimony can inform the jury

---

**2.** One of the prosecuting witnesses also complained of a "painful" rectal examination.

**3.** *See* Sheft, *supra,* noting one of the salutary effects of Rule 413 is that, "[s]ince neither stranger nor acquaintance rapes generally occur in the presence of credible witnesses, this rule permits other victims to corroborate the com-

plainant's account via testimony about the defendant's prior sexually assimilative behavior." 33 Am.Crim.L.Rev. at 69–70. The fact that there were already two complaining witnesses at the Grand Jury makes this an even less compelling *raison d'etre* in the present case.

what procedures require a glove or whether a breast or rectal examination was medically appropriate in each situation, and if so how it can be appropriately performed. Since each such situation is different, then, multiplying complaining witnesses will multiply conflicting expert testimony. The experts will have to go over the details of each examination and, for the evidence to be relevant, the jury will have to determine whether each of these women was legally assaulted by Defendant. Moreover, since much of the expert testimony regarding the Rule 413 witnesses will of necessity overlap the expert testimony regarding the two complaining witnesses, the potential for confusion is magnified.

At oral argument, the Assistant United States Attorney argued that by adopting Rule 413, Congress has already determined that repeated instances of similar conduct will not confuse the jury so long as the incidents are relatively close in time. The Court finds nothing in the congressional debate to support this conclusion, and thinks the Wright & Miller treatise more accurately portrays the difficulty in a case like this, where the criminal nature of the prior acts is not obvious:

> Because the jury must first find that the defendant committed the uncharged crimes before it can use them as evidence of the charged crime, the trial of a single offense can be converted into two, three, four, or more trials if the defendant does not concede the commission of the uncharged crimes [footnote omitted]. The author of Rule 413 thinks the only "concern * * * is diffusing the focus of the proceedings and distracting the trier" but this rather seriously understates the problem [footnote omitted]. The trial takes

longer, [footnote omitted] the defense may not have the resources to effectively rebut a mass of accusations, [footnote omitted] the jury instructions are complicated by multiple charges and multiple standards of proof, [footnote omitted] and it may be difficult for the jury to separate the evidence on one accusation from the evidence on others. [footnote omitted]

23 *Federal Practice and Procedure* § 5412 at 264 (Supp.1996). *See also Report of the Judicial Conference on the Admission of Character Evidence in Certain Sexual Misconduct Cases,* 159 F.R.D. 51, 53 (1995).

 A trial court has the authority, if not the duty, to exclude evidence which will likely confuse the jury on peripheral issues. *Turner v. Allstate Ins. Co.,* 902 F.2d 1208 (6th Cir.1990); *United States v. Dennis,* 625 F.2d 782 (8th Cir.1980). Outside the context of Rule 413, juries are shielded from repetitive and cumulative evidence which wastes their time and creates a risk of confusion. *United States v. Adams,* 914 F.2d 1404 (10th Cir.), *cert. denied,* 498 U.S. 1015, 111 S.Ct. 588, 112 L.Ed.2d 593 (1990); *Lutz v. Weld County Sch. Dist.,* 784 F.2d 340 (10th Cir. 1986). In the present context, however, the Government argues it has an absolute right to present a stream of witnesses "to show that the defendant has an on-going disposition to commit sexual assaults against his female patients." (Resp. Def.'s Mo. in Limine to Preclude Admis. Uncharged Allegations Under Rules 403, 404(B) or 413 at 12).[4] This Court is aware of debate over the constitutionality of Rule 413,[5] but does not believe it necessary to confront that debate here. Rather, the Court believes it is more appropriate to interpret Rule 413, like the other Rules of Evidence, to "secure fairness

---

**4.** Unlike *Roberts,* 88 F.3d at 872, there is little debate in the present case as to whether or how Defendant touched any of his prior patients within the context of his "authority." The issue here is not whether Defendant had the opportunity to touch, but whether the touching was "sexual," which turns largely on expert evidence.

**5.** The Judicial Conference of the United States opposed the adoption of Rule 413 in part because of the constitutional problems it raised. *See Report of the Judicial Conference on the Admission of Character Evidence in Certain Sexual Misconduct Cases,* 159 F.R.D. 51, 56 (1995). *See*

*also* Sheft, *supra* at 76–80; Wright & Miller, § 5412 (raising the prohibition against prosecution for status under *Robinson v. California,* 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962), precedent); James Joseph Duane, *The New Federal Rules of Evidence on Prior Acts of Accused Sex Offenders: A Poorly Drafted Version of a Very Bad Idea,* 157 F.R.D. 95, 107–08 (1994); Stephen R. Henley, *Caveat Criminale: The Impact of the New Military Rules of Evidence in Sexual Offense and Child Molestation Cases,* 1996 Army Law. 82, 89 (Mar. 1996).

in administration, elimination of unjustifiable expense and delay, and promotion of growth and development of the law of evidence to the end that the truth may be ascertained and proceedings justly determined." Fed. R.Evid. 102. These goals would not be served by allowing six rather than two witnesses to testify as to how they believe Defendant sexually assaulted them and, more importantly, subjecting the jury to the expert testimony necessary for it to determine the legal significance of such testimony by each Rule 413 witness.

Now, therefore,

**IT IS ORDERED** as follows:

1. *Defendant's Motion in Limine to Preclude Admission of Uncharged Allegations Under Rules 403, 404(B) or 413* [# 10] is GRANTED as to the four witnesses offered under Rule 413;

2. The *United States' Motion in Limine to Exclude Evidence of Prior Sexual Abuse* [# 111] is MOOT;

3. *Defendant's Motion for Clarification Regarding Availability of Compulsory Process for Medical Records Previously Subpoenaed Pursuant to Rule 17(c)* [# 98] is MOOT;

4. The *United States' Motion in Limine Regarding Admissibility of Specific Instances of Good Conduct* [# 82] is GRANTED; and

5. Defendant's *Motion to Require the Government to Provide an Address or to Produce a Necessary Witness for Motion Hearing or, in the Alternative, to Exclude Her Testimony at Trial* [# 115] is MOOT.