William L. DEUTSCH, et al.

v.

CHESAPEAKE CENTER, et al.

Civil No. S 98–1614.

United States District Court,
D. Maryland.

Dec. 1, 1998.

Lisa M. O'Mara, Law Office, Towson, MD, Hillary Galloway Davis, Davis & Associates, Towson, MD, for William L. Deutsch, Elaine Deutsch, plaintiffs.

Thomas M. Mackall, Law Office, Washington, DC, Dina M. Gold, Hunton & Williams, Washington, DC, Benjamin W. Hahn, Law Office, Annapolis, MD, for Chesapeake Center, Synod of the Mid–Atlantic of the Presbyterian Church (U.S.A.), Inc., Carroll Jenkins, defendants.

## MEMORANDUM OPINION

SMALKIN, District Judge.

This is the end result of an employment dispute that pits an ordained Presbyterian minister and his wife against the Synod of the Mid–Atlantic of the Presbyterian Church and the Rev. Dr. Carroll Jenkins, the Synod's Executive Director. The plaintiff and his wife were hired to be the Director and Food Service Director, respectively, of the Chesapeake Center, an overnight lodging and meeting facility for church groups and youth of the Synod. The couple was hired in February, 1990. Neither of the plaintiffs was given a individual employment contract for a fixed term.

The job performance of the Rev. Mr. Deutsch through 1995 was criticized by Rev. Dr. Jenkins as below expectations in the areas of financial management and communications. This evaluation had been preceded by a period of disharmony at the Center, at the heart of which were accusations by a black employee, Mr. Nass, of racism on the part of Mr. Deutsch. Things got worse in the winter of 1997, when even Mr. Deutsch noticed a "level of dysfunction" at the Center and the need for third-party intervention to help heal employee relations at the Center. During a "team building" effort, further accusations of racism, and accusations of sexual harassment, were made against Mr. Deutsch.

When the team-builder mentioned his work (and these accusations) to a member of the Center's personnel committee, the matter came to the attention of the Rev. Dr. Jenkins. The personnel subcommittee subsequently met and voted to terminate the employment of the Rev. Mr. Deutsch and his wife. The couple were informed that they were being terminated for racist behavior and sexual harassment by Rev. Mr. Deutsch, and that Elaine Deutsch was "second in command and had to share responsibility."

Thereafter, the Rev. Mr. Deutsch applied for a position as pastor of a church in Pennsylvania. On his personal information form was a release that authorized any previous employer or ecclesiastic body to release relevant information related to sexual misconduct to the prospective employer.

An executive with the prospective employer asked the Rev. Dr. Jenkins why the Rev. Mr. Deutsch had left the Center, and in a conversation "off the record," the Rev. Dr. Jenkins indicated that he was terminated because of difficulties in the areas of sexual harassment and racial discrimination.

In October, 1997, the Deutsches were furnished with written explanations of the reasons for their discharge and were afforded the opportunity to present their positions to the Executive Committee of the Synod, but plaintiffs did not participate. This lawsuit then resulted. It was originally filed in the Circuit Court for Cecil County, Maryland, but was removed by the non-Maryland defendants to this Court under its diversity removal jurisdiction. The Court, of course, must apply Maryland law, including Maryland's choice of law rules, to this case under the *Erie–Klaxon* doctrine.

The defendants now move for summary judgment, and the plaintiffs have cross-moved for summary judgment as to the breach-of-contract count. No oral hearing or further briefing is necessary. Local Rule 105.6, D. Md.

■ Both Deutsches sue, in Count I, for breach of an employment contract. In Maryland, employment is normally at will, and it may be terminated by the employer or the employee without any reason and at any time, unless there is a contract, express or implied, that limits the termination right of either the employee or the employer. *See, e.g., Castiglione v. Johns Hopkins Hospital,* 69 Md.App. 325, 517 A.2d 786, *cert. denied,* 309 Md. 325, 523 A.2d 1013 (1987). In some cases, an employee handbook may create an employment contract that limits the employer's ability to terminate at will. *Id.; Staggs v. Blue Cross of Maryland, Inc.,* 61 Md.App. 381, 486 A.2d 798, *cert. denied,* 303 Md. 295, 493 A.2d 349 (1985). Even where it does, such a contract does not change the funda-

mental nature of the employment relationship as "at will," but merely requires that the employer follow the contract's disciplinary/termination procedures. *See, e.g., Suburban Hosp. v. Dwiggins,* 324 Md. 294, 304–05, 596 A.2d 1069 (1991). It is for the Court, in the first instance, to interpret the materials relied upon by the employee as creating a contractual limitation on ordinary at-will termination rights to determine whether, in fact, they do so. Where the language of a contract is unambiguous, its interpretation is for the Court under Maryland law. *Cf. Federal Leasing, Inc. v. Amperif Corp.,* 840 F.Supp. 1068, 1073 (D.Md.1993).

In this case, the defendant Synod's personnel manual has a clear and unequivocal statement that the disciplinary and termination procedures therein are simply "advisory policy guidelines," and that the Council may depart from the established policies and procedures, maintaining "the discretion to deal with particular (perhaps unanticipated) circumstances as they arise." The relevant provision goes on to state that the Council "may follow other practices in a particular situation if [it] concludes that another approach is appropriate. The ... Council maintains the exclusive right to interpret, modify, suspend or eliminate any or all, of any part of, these policies and practices, at any time."

■ There is simply no question that this language is sufficient to comply with Maryland's requirements for an employer's disclaimer of contractual intent as to procedural guarantees in policy and personnel handbooks, *Castiglione,* 69 Md.App. at 341, 517 A.2d 786, and gives an insufficient basis for any reasonable person to conclude that the employer is bound to follow the ordinary disciplinary/termination procedures *in every single case.* The Court holds, as a matter of law, that this language unambiguously disclaims any contractual intent to make the procedures mandatory without exception. *See Zahodnick v. IBM,* 135 F.3d 911, 914–15 (4th Cir.1997). *See also Bagwell v. Peninsula Regional Medical Center,* 106 Md.App. 470, 490–94, 665 A.2d 297 (1995).

The plaintiffs point out some arguably stronger disclaimer language in other Maryland cases, but they have not identified any *sine qua non* required under Maryland law for a legally sufficient disclaimer, as, quite understandably so, there is none. Of course, not all attempts at disclaimers will be effective, but the one in this case is obviously such as to preclude the kind of employee reliance that gives rise to a contractual obligation under Maryland law.

The case of *Haselrig v. Public Storage, Inc.*, 86 Md.App. 116, 127–32, 585 A.2d 294 (1991), has been pointed to as setting forth language that is insufficiently clear to constitute an effective disclaimer as a matter of law, thus requiring interpretation by the trier of fact. There, the language was so weak as not even to compare with that in this case. The language in *Haselrig* was only a legal definition of at-will employment, and a provision concerning probationary employment (the employee being *non*-probationary). In this case, the language at issue was much more than a legalistic definition of at-will employment. It made crystal clear that the employer reserved the right to adopt procedures and punishments other than those set forth in the handbook.

(Despite the fact that the action taken against the plaintiffs was not expressly taken in the name of the Synod Council, but by a subordinate body, it is clear that the Council had delegated the particulars of the employment relationship to the body that actually discharged the plaintiffs, and no one reasonably could interpret the disclaimer as applying only to actions of the Council itself, exclusive of its subordinate entities.)

Under the circumstances, the Court is of the opinion that there is no issue for trial as to Count I as to either of the plaintiffs, and summary judgment will, therefore, be entered for the defendants as to Count I. Fed. R.Civ.P. 56(c). *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). (Of course, in that the action of the defendants was purely private, the notice and hearing rudiments of due process required of public employers in such cases as *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), are not applicable.)

The defamation claim brought by the plaintiffs is clearly barred by both Maryland's and Pennsylvania's conditional privilege to communicate information concerning a former employee to a prospective employer. In both Maryland and Pennsylvania, and at common law, the conditional privilege is overcome only by proof of malice. *See, e.g, Beckman v. Dunn*, 276 Pa.Super. 527, 419 A.2d 583 (Pa.Super.1980). *See also Simon v. Union Hospital of Cecil County, Inc.*, 15 F.Supp.2d 787 (D.Md.1998).

The plaintiffs have failed, under *Celotex Corp. v. Catrett, supra*, to bring forth adequate evidence to generate a triable issue on the defendants' malice. Even a failure to investigate fully does not constitute malice in this sense, as the Fourth Circuit recognized in *DeLeon v. St. Joseph's Hospital, Inc.*, 871 F.2d 1229 (4th Cir.1989), and the result would be the same if Pennsylvania allowed the privilege to be overcome by proof of negligence. No reasonable jury could possibly find that it was negligent to rely on the report of Dr. Lewis.

The Court also holds that the plaintiffs have failed to make the showing, by clear and convincing evidence, necessary to overcome the presumption of good faith applicable in such cases under Md. Cts. & Jud. Proc.Code Ann. § 5–423.

To the extent that Pennsylvania has a different rule, the Court is of the opinion that Maryland's choice of law rule needs to be followed, *see Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), which would result in Maryland's applying § 5–423 in the circumstances of this case. It certainly seems to this Court that the statute in question (§ 5–423) sets forth a vital public policy of Maryland. *See, e.g., Bethlehem Steel v. G.C. Zarnas*, 304 Md. 183, 498 A.2d 605 (1985). In a world in which employers face almost insurmountable, and dreadfully costly, hurdles trying to discharge an employee, due to the arsenal of administrative and judicial artil-

lery—including suits such as this—that former employees can bring against them, it is vital that they be allowed the latitude afforded them by Maryland's statutory presumption of good faith in giving and gathering references about prospective employees before hiring them. (Although the foregoing analysis applies, in terms, to both plaintiffs, there is no evidence that any defamatory statement was issued as to the plaintiff Mrs. Deutsch in the first place.)

Consequently, the defendants are entitled to prevail against both plaintiffs on the defamation claim.

 The Court also notes that plaintiff Elaine Deutsch's wrongful termination claim is insufficient as a matter of Maryland law, as she has identified no public policy of the state that bars her termination. Maryland strictly limits wrongful termination claims to those involving a prominent public policy of the state, *Adler v. American Standard Corp.*, 291 Md. 31, 432 A.2d 464 (1981), and a termination, as alleged here, in violation of spousal and/or marital rights is plainly insufficient under current Maryland law, to support the plaintiff, Elaine Deutsch's, wrongful termination claim. Furthermore, her pursuit of an administrative claim with the Maryland Commission on Human Relations would preclude the claim, even if it could be asserted in the first place under *Adler*. *Makovi v. Sherwin–Williams Co.*, 316 Md. 603, 561 A.2d 179 (1989).

Finally, the Court finds merit in, but needs not discuss in detail, defendants' claim that the termination of the Rev. Mr. Deutsch is protected from judicial inquiry by the First Amendment. Clearly, the religious doctrines and dogma of the Synod prescribe standards for assessing the conduct of one of its clergy, whether or not that clergyman was functioning as a pastor or an administrator, and they proscribe discriminatory and/or harassing conduct. Even the Rev. Mr. Deutsch has acknowledged, in his deposition at page 181, that the ecclesiastical teachings of the Presbyterian Church prohibit racism and/or sexism. Although his position was not classified as a pastoral position *per se*, the Rev. Mr. Deutsch performed pastoral functions as a part of his job, including sacramental ones. Thus, it would involve the Court too much in the "spiritual functions" of his church, involving assessment and application of religious doctrines and dogma, to adjudicate the present claim brought by him. *See Rayburn v. General Conference of Seventh–day Adventists*, 772 F.2d 1164, 1171–72 (4th Cir.1985). *See also Natal v. Christian and Missionary Alliance*, 1988 WL 159169 (D.P.R.), *aff'd*, 878 F.2d 1575 (1st Cir.1989).

For the stated reasons, an Order will be entered separately, granting the defendants' motion for summary judgment, and entering judgment in favor of them, with costs.

### ORDER AND JUDGMENT

For the reasons stated in the foregoing Memorandum Opinion, it is, this 1st day of December, 1998, by the Court, ORDERED and ADJUDGED:

1. That defendants' motion for summary judgment BE, and it hereby IS, GRANTED;

2. That plaintiffs' cross-motion for summary judgment BE, and it hereby IS, DENIED;

3. That judgment BE, and it hereby IS, entered in favor of the defendants, and against the plaintiffs, with costs; and

4. That the Clerk of Court mail copies hereof and of the foregoing Memorandum Opinion to counsel for the parties.