Emme SZOT, Plaintiff,

v.

ALLSTATE INSURANCE COMPANY, Defendant.

Civil Action No. AW–99–3855.

United States District Court, D. Maryland, Southern Division.

Aug. 24, 2001.

Joseph JD Erasmo, Rockville, MD, for plaintiff.

Janet M. Truhe, Miller & Truhe, L.L.C., Westminster, MD, for defendants.

## MEMORANDUM OPINION

WILLIAMS, District Judge.

Plaintiff, Emme Szot, brings this diversity action against her former employer, Allstate Insurance Company ("Allstate"). Based upon the events surrounding her discharge, Ms. Szot asserts claims of breach of her employment contract (Count I) and defamation (Count II). Currently pending before the Court is Defendant's Motion for Summary Judgment [15–1]. The motion has been fully briefed by all parties. No hearing is deemed necessary. *See* Local Rule 105.6. Upon consideration of the arguments made in support of, and opposition to, the motion, the Court makes the following determinations.

## I. *FACTUAL BACKGROUND*

On November 17, 1986, Ms. Szot entered into an employment agreement with Allstate. The "R1500" Agent Employment Agreement (the "Agreement") set forth the terms and conditions of Plaintiff's employment as an agent of Allstate, including provisions relating to discipline, suspension, and termination. With respect to termination, Section 11 of the Agreement states, in pertinent part, "your employment and this Agreement may be terminated at will by either party, subject only to such limitations and restrictions as may be imposed by law, and in accordance with Company rules and procedures." (Def.Mot.Summ.J.Ex. B at 3.)

Ms. Szot worked under this agreement for twelve years. During her tenure, Ms. Szot sold a variety of Allstate insurance products, including property and casualty insurance. Her employment record reflected a high volume of sales and that Ms. Szot was regarded as an outstanding and highly productive senior account agent.

During her employment, Ms. Szot had a number of disagreements with Margaret Hixon, the Territorial Risk Manager for Maryland and head of Allstate's Underwriting Department, regarding issues of coverage and the application of Allstate's Discount Rules. The center of the controversy surrounded the crediting of protective and renovated home discounts. A protective device discount ("PDD") "is allowed for the installation of burglary and/or fire alarm systems in the residence" in accordance with a specified schedule that included a "smoke detector on every floor, fire extinguisher, [and] dead bolt locks on all exterior doors." (Def.Mot.Summ.J.Ex L. at 16). A "renovated home" discount is available if a "roof, plumbing, electrical, and heating/cooling system" has been installed "by a licensed contractor within the last 9 years." (*Id.* at 13.) Ms. Szot understood Allstate's procedures with respect to giving "protective device" or "renovated home" discounts as permitting a discount if, based upon the customer's representations to the agent, the prerequisites were satisfied at the time of application or within thirty days of the application. Ms. Hixon and Allstate interpreted its procedures to require that, based upon the customer's representations to the agent, the prerequisites must be satisfied at the time of application alone.

Because of the disagreements, Ms. Hixon referred four polices written by Ms. Szot to Human Resources as required for reporting perceived inconsistencies. Human Resources transferred the polices to Francisco "Frank" Miguel Llende, Territorial Corporate Security Manager for Allstate, to investigate whether Ms. Szot committed an integrity violation or infraction. In addition, Mr. Llende received Ms. Szot's employment agreement, Allstate's code of ethics, and its guidelines for allowing discounts. According to his report,

Mr. Llende interviewed Ms. Szot and the customers of the transferred policies. (Def.Mot.Summ.J.Ex. K at 1.) Each of the customers interviewed provided information indicting that he or she did not qualify for the discounts at the time of application. The customers stated that, at the time of application, either Ms. Szot did not ask about the presence of certain requirements or they informed her that the requirements were not presently in place. During her interview, Ms. Szot explained her interpretation as to when protective device and renovated home discounts were permissible. However, with respect to three of the four policies at issue, she stated that the customers represented to her the requirements for the discounts were satisfied at the time of application. With respect to one customer, Matthew Parker, Ms. Szot acknowledged that he represented to her that the requirements were not in place at the time of application, but would be satisfied within thirty days. Based upon this information, Ms. Szot gave Mr. Parker the discounts. After completing his investigation, Llende drafted a report stating that there was sufficient evidence to support terminating Ms. Szot for dishonesty and falsification of company documents. The report concluded that "the irrefutable evidence proved Szot falsified customer Parker's Allstate Homeowners insurance application" and "the weight of the evidence indicates Szot also falsified [three other customers'] Allstate Homeowner insurance applications." (Def.Mot.Summ.J.Ex K at 6.) Llende submitted his report and it was distributed to five managers.

Based upon the contents of the report, Ms. Szot was recommended for termination. As the reason for termination, the recommendation stated "[d]ishonesty and violation of company policy relative to falsification of company documents as outlined in the HR Policy Manual, Chapter 17, Section 4.2, the Sales Code of Ethics and Statement of Policy and the R1500 Agent Employment Agreement." (Pl. Opp'n Ex. 2). On December 16, 1998, Sean Wilson, the Human Resources Division Manager, and Tim Semones, Ms. Szot's supervisor, requested a meeting with Ms. Szot in Mr. Semones' office. At the meeting, Mr. Semones informed Ms. Szot that she was being terminated for dishonesty and falsification of corporate documents. Ms. Szot inquired as to the particular documents involved. Mr. Wilson identified application information as the source and stated that he was not at liberty to discuss the details of the corporate security investigation or the decision making process. After Ms. Szot continued to request more details, Mr. Wilson stated that the decision to terminate her was based upon the four applications investigated by corporate security.

## II. *DISCUSSION*

### A. *Standard of Review*

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment will be granted when no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Haavistola v. Community Fire Co. of Rising Sun, Inc.*, 6 F.3d 211, 214 (4th Cir.1993); *Etefia v. East Baltimore Comm. Corp.*, 2 F.Supp.2d 751, 756 (D.Md.1998). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 1). The court must "draw all

justifiable inferences in favor of the non-moving party, including questions of credibility and of the weight to be accorded particular evidence." *Masson v. New Yorker Magazine,* 501 U.S. 496, 520, 111 S.Ct. 2419, 115 L.Ed.2d 447 (1991) (citations omitted). While the evidence of the non-movant is to be believed and all justifiable inferences drawn in his or her favor, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transportation, Inc.,* 152 F.3d 326, 330–31 (4th Cir.1998); *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir.1985). "Unsupported speculation is not sufficient to defeat a summary judgment motion." *Felty v. Graves–Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir.1987). In responding to a proper motion for summary judgment, the party opposing summary judgment must present evidence of specific facts from which the finder of fact could reasonably find for him or her. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505; *Celotex Corp.,* 477 U.S. at 322–23, 106 S.Ct. 2548. In the absence of contradictory evidence showing a genuine dispute as to a material fact, the moving party is entitled to judgment as a matter of law. *Celotex Corp.,* 477 U.S. at 317, 106 S.Ct. 2548. For the purposes of summary judgment, a genuine dispute exists if a reasonable jury could return a verdict for the non-moving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Plaintiff asserts two claims under Maryland law, breach of her employment contract and defamation. As a case brought before the federal court under its diversity jurisdiction, the substantive laws of the forum state, Maryland, apply to the advanced state claims. *See, e.g., Erie R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

### B. *Count I (Breach of Contract)*

■■■ Ms. Szot alleges that Allstate breached her employment contract in terminating her. "It is a longstanding principle in Maryland that an indefinite hiring is prima facie a hiring at-will." *Lubore v. RPM Associates, Inc.,* 109 Md.App. 312, 326, 674 A.2d 547, 554 (1996). "Where, therefore, the employment contract is of an indefinite duration, the contract is one for at-will employment and ... either party at any time may legally terminate it." *Id.* "As the designation implies, an employer may ordinarily terminate an at-will employee at any time, for almost any reason or for no reason." *Samuels v. Tschechtelin,* 135 Md.App. 483, 525, 763 A.2d 209, 232 (2000). However, "at-will employment is subject to modification 'by the provisions of an employee handbook or the provisions of a personnel policy.'" *Samuels,* 135 Md.App. at 525, 763 A.2d at 232 (citing *Staggs v. Blue Cross of Md., Inc.,* 61 Md.App. 381, 392, 486 A.2d 798 (1985)). "In some cases, an employee handbook may create an employment contract that limits the employer's ability to terminate at will." *Deutsch v. Chesapeake Center,* 27 F.Supp.2d 642, 644 (D.Md.1998). Nevertheless, such documents do "not change the fundamental nature of the employment relationship as 'at will,' but merely requires that the employer follow the contract's disciplinary/termination procedures." *Deutsch,* 27 F.Supp.2d at 644.

There is no dispute that Ms. Szot's employment agreement was for an indefinite duration. Therefore, she was an at-will employee. However, the Agreement expressly states that Ms. Szot was terminable at will "subject only to such limitations and restrictions as may be imposed by law, and in accordance with Company rules and procedures." (Def.Mot.Summ.J.Ex A.) Ms. Szot alleges that this provision, and the documents incorporated thereunder, limited Allstate's ability to terminate her contract. It is undisputed that termination of Plaintiff's employment agreement

was subject to § 27–503 of the Insurance Article of the Maryland Code which states as follows:

> An insurer may not cancel a written agreement with an insurance producer about insurance or refuse to accept insurance business from the insurance produce unless the insurer complies with this section..... Notwithstanding any other provision of this section, an insurer may not cancel or amend a written agreement with an insurance producer or refuse to accept business from the insurance producer if the cancellation, amendment, or refusal is arbitrary, capricious, unfair, or discriminatory or is based wholly or partly on the race, creed, color, sex, religion, national origin, or place of residency of the insurance producer or the applicants or policyholders of the insurance producer.

Md.Code. Ann, *Insurance*, § 27–503(a); (d) (1997), *amended by* Insurance Producer Licensing Act, S.B.576, 2001 Maryland Laws Ch. 731 § 1 (May 18, 2001).[1] It is also undisputed that Allstate established certain termination and disciplinary procedures. Therefore, the Court concludes that these standards, as specified, were incorporated into the Plaintiff's employment agreement. In light of § 27–503 and the terms of Allstate's disciplinary procedures, the Court will address each of Ms. Szot's arguments that Allstate breached her employment agreement.

1. *Termination in Violation of Disciplinary Rules*

■ Ms. Szot states that her termination breached Allstate's written disciplinary procedures. As support, Ms. Szot points to the following provisions in Allstate's disciplinary procedures:

> The Company will not terminate the agent's employment because of unsatisfactory work unless the agent has been notified that his/her work is unsatisfactory and that his/her job is in jeopardy and unless he/she has been given a reasonable opportunity to bring his or her performance up to satisfactory standards. The term "unsatisfactory work" relates to the quality of performance.

> Notification that the agent's job is in jeopardy is not required in the event of termination of employment for an indictment of a criminal act or an act of dishonesty, such as, by of example but not limited to, the following: embezzlement, falsification of any Company document completed or approved by the agent in the performance of the agent's duties, fraud, or misrepresentation of a material fact, or forgery. Such notification is also not required in the event of termination of employment resulting from the violation of a provision in the R1500 Agent Employment Agreement.

(Def.Mot.Summ.J.Ex F.) Ms. Szot asserts that, under this provision, she was entitled to a probationary period to reform her conduct before her termination. According to the "sign-off" sheet for Ms. Szot's discharge, she was terminated for "[d]ishonesty and violation of company policy relative to falsification of company documents as outlined in the HR Policy Manu-

---

**1.** The Insurance Producer Licensing Act substitutes the terms "agent" or "broker" for "insurance producer" and defines an "insurance producer" as "a person that, for compensation, sells, solicits, or negotiates insurance contracts, including contracts for nonprofit health service plans, dental plan organizations, and health maintenance organizations, or the renewal or continuance of these insurance contracts for: (i) persons issuing the insurance contracts; or (ii) Insureds or prospective insureds other than the insurance producer." S.B.576, 2001 Maryland Laws Ch. 731 § 1 (to be codified at Md.Code. Ann, *Insurance*, § 1–101(u)(1)).

al, Chapter 17, Section 4.2, the Sales Code of Ethics and Statement of Policy and the R1500 Agent Employment Agreement." (Pl.'s Opp'n Ex. 2.) The same reasons communicated to Ms. Szot on the date of her firing.

In *Hudson v. Allstate Ins. Co.*, 93 F.3d 296, 301 (7th Cir.1996), the Seventh Circuit Court of Appeals, faced with the same contractual language, rejected a similar argument. In *Hudson*, an Allstate agent terminated for an act of dishonesty argued that the "unsatisfactory work" provision obligated Allstate to fire him only for cause, 93 F.3d at 300. Rejecting this extension of the "unsatisfactory work" provision, the court stated:

> We find nothing in the contract that limits Allstate's underlying right to terminate for any reason at all except the unsatisfactory performance ground listed at the beginning of Section XI. The fact that the agreement goes out of its way to specify that notice is not required if the basis of termination is a criminal or dishonest act (as opposed to any myriad of other reasons that do not amount to "unsatisfactory work," but are neither criminal nor dishonest) cannot be transformed into a general rule requiring Allstate to demonstrate that its reason for termination qualified as "good cause" in all cases. Employers may need to move quickly when criminal or dishonest activity is involved, which would explain why

the agreement goes out of its way to negate any inference of a notice rule in those cases.

*Hudson*, 93 F.3d at 300. One court came to a different interpretation of the same contractual language.[2] *See Morales v. Allstate Ins. Co.* No., C–95–02308 PVT, 1995 WL 616654, *3–*5 (N.D.Cal. Oct. 13, 1995) (unpublished opinion). In *Morales*, the Court interpreted the provision as only "provid[ing] that for certain types of particularly bad employee conduct (criminal acts, dishonesty), the employer is not required to give the employee notice or an opportunity to change." *Id.* at *4. The *Morales* court found that, "if Allstate has good cause, for certain types of behavior, it need not give the employee an opportunity to improve or change[,]" but "must still show cause for the termination." *Id.*

The Court finds the analysis of the *Hudson* court to be more persuasive than the *Morales* court in light of the express language of the Agreement, the facts of the instant case, and Maryland law. The contract in this case expressly states that "the Agreement may be terminated at will by either party, *subject only* to such limitations and restrictions as may be imposed by law, and in accordance with Company rules and procedures." (Def.Mot.Summ.J.Ex B at 3) (emphasis added.) The "unsatisfactory work" provision represents an exception within the Agreement where the quality of the

**2.** In *Turner v. Allstate Ins. Co.*, 902 F.2d 1208, 1209 (6th Cir.1990), the Sixth Circuit interpreted an agent employment agreement in which "[a]mong the terms and conditions of the employment agreement was a provision prohibiting [the agent's] termination except for 'just cause' and '[a]n "act of dishonesty" such as, ... falsification of any Company or industry plan documents ...' was specifically listed as 'just cause' for employment termination." The dissenting opinion states that the contract "nowhere reflect this term, 'good cause,' but rather refers to 'unsatisfactory work' as a basis for termination subject to an opportunity of notice and review except in case of 'falsification of any Company documents.'" 902 F.2d at 1216 (Wellford, J., dissenting). Given the apparent conflicting recitations of the contract language, it is unclear whether the *Turner* court was interpreting the same language before this Court. *See Hudson*, 93 F.3d at 300 ("For all we can tell, the contract that Turner signed was different from Hudson's and contained a promise not to terminate him except for good cause.").

agent's work is at issue. The segregation of the acts of dishonesty as conduct that does not require notification significantly undermines the proposition that such acts are still subject to the termination protections of the "unsatisfactory work" provision. This result is consistent with Maryland's limitation of the *Staggs* doctrine to "the specific policy or termination procedure that expressly limits the employer's discretion to discharge." Stanley Marzaroff, *Maryland Employment Law* § 3.2(F) (1990 & Supp.1998). As the Maryland Court of Appeals stated in *Suburban Hosp., Inc. v. Dwiggins,* 324 Md. 294, 309–10, 596 A.2d 1069, 1077 (1991):

> If an employer unilaterally adds specific limitations or conditions on the right to terminate at-will, those specific limitations or conditions should be enforced by the courts, but they should not be expanded by the courts. Specific modifications to the at-will relationship should not be an indication that the employer intends to go beyond the specific modifications.

Furthermore, the Court agrees with the Seventh Circuit's opinion that "[a] company cannot avoid its contractual responsibilities for performance-related dismissals merely by invoking some other reason and reciting the employment-at-will doctrine." *Hudson,* 93 F.3d at 301. Still, as the plaintiff in *Hudson,* there is no indication in the record that Ms. Szot was fired for "unsatisfactory work" or the quality of her performance. Allstate's investigation revealed Ms. Szot's mistaken interpretation of its procedures as allowing discounts when the customer represented that he would eventually qualify for the discount within thirty days of the application and that, in at least one instance, she reduced her belief to practice. Shortly thereafter, it terminated her employment. Furthermore, Ms. Szot has not produced any evidence that could reasonably support a

finding that the enumerated reasons constituted a pretext for avoiding Allstate's responsibilities under the "unsatisfactory work" provision. The undisputed facts show that Ms. Szot was terminated for noting on a homeowner's insurance application that the customer satisfied the prerequisites for particular discounts when she knew he did not and that Allstate believed that such conduct fell with the meaning of an act of dishonesty and falsification of company documents. *See Kaniff v. Allstate Ins. Co.,* 121 F.3d 258, 265 (7th Cir.1997) (finding no genuine dispute of material fact where the record plainly reflected Allstate's belief that the agent engaged in "acts of dishonesty"). Two infractions for which notification is not required. As such according to the very disciplinary rules she cites as incorporated into her employment agreement, Ms. Szot was not entitled to any "job-in-jeopardy" notification or probationary period prior to her termination.

### 2. *Standard of Proof Required to Support Finding of Falsification*

Ms. Szot asserts that, before firing her for dishonesty and falsification of company documents, Allstate had to prove that she committed fraud by clear and convincing evidence. The Court disagrees. First, Ms. Szot imputes the legal standard for proving civil fraud into a company's internal investigation of an employee's suspected misconduct. Maryland courts have declined to inject such standards into employment decisions. In Maryland, "[s]o long as an employer follows its policy stated procedures and acts in good faith in determining what is good cause as to the formulation of its disciplinary measures and then, using the proper procedures, in good faith, applies its standards to the facts presented, there is no actionable wrong." *Elliott v. Board of Trustees*

*of Montgomery County Community College,* 104 Md.App. 93, 109, 655 A.2d 46, 53 (1995). While Ms. Szot may object to the extent of Allstate's investigation, she has produced no evidence of bad faith or departure from its policy stated procedures. Likewise, in *Kaniff v.. Allstate Ins. Co.,* the Seventh Circuit expressly rejected a terminated agent's argument that, "if Allstate wishes to terminate an employee for [acts of dishonesty], it must demonstrate in court that the employee engaged in dishonesty." 121 F.3d at 266. The court found that, except for unsatisfactory performance, Allstate was not subject to any such strictures of proof before terminating the employee. *Id.*

Secondly, Ms. Szot attempts to equate "fraud" with dishonesty and falsification of Company documents. In addition to embezzlement, falsification of any Company document completed or approved by the agent in the performance of the agent's duties, misrepresentation of a material fact, and forgery, "fraud" is one of several enumerated examples of prohibited conduct that would amount to "an act of dishonesty." The disciplinary rules themselves specify "fraud" and "falsification of Company documents" as two separate and independent examples of "an act of dishonesty." The disciplinary rules also state that "an act of dishonesty" is not limited to "fraud." Under the undisputed facts, Allstate's expressed reason for firing Ms. Szot was dishonesty and falsification of insurance applications. There is simply no evidence that Allstate fired Ms. Szot for fraud. Ms. Szot has cited no authority nor can the Court find any such legal authority stating that an employer must satisfy the legal burdens of proving fraud before terminating an employee for dishonesty and falsifying company documents. Therefore, the Court finds that the standards of proof for proving civil liability for fraud are inapplicable to the instant case.

### 3. Ambiguities and Inconsistencies in Handling of Discounts

Ms. Szot alleges that her conduct cannot amount to "an act of dishonesty" or "falsification of Company documents" because Allstate's written procedures and customary practices with respect to the allowance of discounts were ambiguous. There is no dispute that Mr. Szot fully understood the underlying requirements for receiving the protective device and home renovation discounts. Ms. Szot's misunderstanding arose from the timing in which the homeowner needed to meet these requirements in order to qualify for the discounts. Ms. Szot believed that giving the discounts based upon a customer's representations that the prerequisites would be satisfied within thirty days of the application complied with the common practice of agents and Allstate's policies.

Ms. Szot relies on the Sixth Circuit decision in *Turner v. Allstate Ins. Co.,* 902 F.2d 1208 (6th Cir.1990) for the proposition that Allstate has no unified practices for determining when and whether a customer qualifies for homeowner's discounts. In *Turner,* the agent, like Ms. Szot, was terminated for falsely representing that customers were entitled to PDD discounts. *Id.* at 1209. The |Œ*Turner*| Œ court interpreted Michigan law to place the burden on the employer to prove an affirmative defense that there was "just cause" for the termination. *Id.* at 1210. In *Turner,* Allstate attempted to prove the agent falsified the documents through comparisons with statistical data from other regions in the state. *Id.* at 1212. The district court found the statistical comparisons to be of little probative value because of the differences in the regions served, the absence of evidence of uniformity in training, and testimony indicating that agents differed in opinions as to what qualified a customer

for the PDD and, thus, refused to admit the evidence due to its highly prejudicial effect. *Id.* at 1213.

The Court finds that analysis of *Turner* inapplicable to the instant case. While Turner and Ms. Szot appear to have been terminated for similar reasons, their burdens and evidence are distinguishable. First, as discussed earlier, it is unclear whether Turner and Ms. Szot signed agreements with the same contractual language. *See supra* note 2. Second, in at-will employment arrangements which incorporate conditions on disciplinary or termination procedures, the Maryland Court of Special Appeal has stated "absent evidence of bad faith on the part of an employer, courts should be reluctant to overturn an employer's decision to discharge an employee when the employer has complied with its own procedures." *Elliott,* 104 Md.App. at 109, 655 A.2d at 53. *See* Stanley Marzaroff, *Maryland Employment Law* § 3.13 (1990). In *Turner,* even the employee's stipulation that the employer acted in good faith was insufficient to avoid liability under Michigan law. 902 F.2d at 1212–13. Lastly, in this case, Allstate is not attempting to prove Ms. Szot falsified the documents with statistical comparisons against other agents rather it relies on her own testimony and the fruits of its security investigation. The *Turner* decision does not establish that, as a matter of law and on a national scale, Allstate's policies on awarding PDD discounts are nonuniform and ambiguous.

Turning to the case at hand, even if Ms. Szot believed in good faith that she could allow the discounts, that belief does not curtail Allstate's discretion in deciding that her representations on a customer's applications that certain prerequisites were already satisfied when in fact she knew they were not amounted to falsification of a company document and an act of dishonesty. As stated above, Maryland law only required Allstate to "follow[ ] its policy stated procedures and act[ ] in good faith in determining what is good cause as to the formulation of its disciplinary measures and then, using the proper procedures, in good faith, appl[y] its standards to the facts presented...." *Elliott,* 104 Md.App. at 109, 655 A.2d at 53. *See supra* p. 603. Furthermore, the Court believes that an employer may rely on such an internal investigation in concluding that an employee engaged in misconduct warranting dismissal. *Cf. Shapiro v. Massengill,* 105 Md.App. 743, 761, 661 A.2d 202, 211 (1995) ("[A]n employer may discharge a term employee, who is in a position requiring trust, based on the employer's reasonable belief that the employee is untrustworthy."); *Townsend v. L.W.M. Management, Inc.,* 64 Md.App. 55, 494 A.2d 239 (1985) (finding that no constructive or wrongful discharge where the employer, relying on polygraph results, determined that the employee was a thief and subsequently terminated him). According to the undisputed facts in the record, Allstate stated its disciplinary procedures with respect to acts of dishonesty, undertook an investigation of Ms. Szot, and, after applying its standards to Plaintiff's case, determined that she falsified a homeowner's application in violation of its code of ethics and her employment agreement. The uncontradicted evidence demonstrates that, based upon this conclusion, Allstate terminated Ms. Szot's employment.

Nearly two years after initiating this suit and having ample opportunity to conduct discovery, Ms. Szot has produced no legally competent evidence indicating that Allstate adopted and applied its standards and disciplinary measures in bad faith. Ms. Szot has presented no evidence that Mr. Llende departed from Allstate's procedures for investigating agents. Instead,

Ms. Szot attacks the quality of Mr. Llende's training and the lack of legal formalities in his investigation, such as obtaining affidavits, tape recordings, and conducting telephonic interviews. Unlike Ms. Szot's burden in opposing the instant motion for summary judgment, neither Allstate nor Mr. Llende was subject to the Federal Rules of Evidence or Federal Rules of Civil Procedure in conducting the internal investigation into Ms. Szot's practices of awarding discounts.

Ms. Szot also refers to her own private investigator's report that one of the customers allegedly interviewed by Mr. Llende informed her investigator that he was not interviewed by an Allstate employee. This bare allegation unsubstantiated by any legally competent evidence is insufficient to create a genuine dispute of material fact. Rule 56 requires the nonmoving party to "set forth specific facts showing there is a genuine issue for trial" by affidavit, depositions, answers to interrogatories, admissions, or other evidence that would be admissible at trial. Fed.R.Civ.P. 56(c), (56)(e). *See Rohrbough v. Wyeth Laboratories, Inc.,* 916 F.2d 970, 973 (4th Cir. 1990); *Keziah v. W.M. Brown & Son, Inc.,* 888 F.2d 322, 326 (4th Cir.1989). Plaintiff's unsupported allegation in her opposing memorandum reiterating the statements her private investigator told her the customer said to him represents classic inadmissible hearsay.[3] Even after viewing the facts and evidence in the light most favorable to Ms. Szot, the Court finds that Ms. Szot has failed to produced sufficient evidence to create a genuine dispute of material fact as to whether Allstate's investigation and decision to terminate her was conducted in good faith and according to its established procedures. In the absence of contradictory evidence creating an issue for trial, the Court concludes that Defendant is entitled to summary judgement as to the breach of contract claim.

### C. *Count II (Defamation)*

 Ms. Szot also asserts a claim of defamation based upon (1) the statements made by Sean Wilson to her, in the presence of her immediate supervisor, pertaining to the reasons for her firing; (2) the subject matter contained in Mr. Llende's report and the recommendation for her termination; and (3) alleged rumors that circulated among agents concerning the basis for her termination. There is no dispute that Ms. Szot is a private person and not a public figure. "In a case involving a plaintiff who is not a public figure, a prima facie case of defamation requires proof of the following elements: (1) that the defendant made a defamatory communication—i.e., that he communicated a statement tending to expose the plaintiff to public scorn, hatred, contempt, or ridicule to a third person who reasonably recognized the statement as being defamatory; (2) that the statement was false; (3) that the defendant was at fault in communicating the statement; and (4) that the plaintiff suffered harm." *Peroutka v. Streng,* 116 Md.App. 301, 311, 695 A.2d 1287, 1292–93 (1997). A " 'false tale of another ... which may impair or hurt his trade or livelihood' [or] a statement 'that adversely affects [an employee's] fitness for the proper conduct of his business ... [is] actionable *per se* at common law.' " *Shapiro v. Massengill,* 105 Md.App. 743, 775, 661 A.2d 202, 218 (1995) (citations omitted). " 'Fault,' for the purposes of the prima facie case, may be based either on

---

**3.** "Hearsay is 'a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence *to prove the truth of the matter asserted.'" United*

*States v. Lis,* 120 F.3d 28, 30 (4th Cir.1997) (alterations in original) (quoting Fed.R.Evid. 801(c)).

negligence or constitutional malice." *Shapiro,* 105 Md.App. at 772, 661 A.2d at 217. Yet, in the context of a work-related defamation claim, by statute [4] and common law, "[c]ommunications arising out of the employer-employee relationship 'clearly enjoy a qualified privilege.' " *Gohari v. Darvish,* 363 Md. 42, 56, 767 A.2d 321, 328 (2001). "Once, by statute or common law, a conditional privilege has been established it must be overcome by a showing of ... malice." *De Leon v. Saint Joseph Hosp., Inc.,* 871 F.2d 1229, 1238 (4th Cir.1989). *See Jacron Sales Co. v. Sindorf,* 276 Md. 580, 350 A.2d 688 (1976); *Fresh v. Cutter,* 73 Md. 87, 92, 20 A. 774, 775 (1890).

 There is no dispute that the content of the statements made against Ms. Szot, if proved false, would be defamatory *per se. See Shapiro,* 105 Md.App. at 775, 661 A.2d at 218 (finding manager's statements at firm-wide meeting inferring that plaintiff "was evasive, secretive, dishonest, dishonorable, and perhaps even a criminal" amounted to defamation *per se* ). Rather, Defendant argues that Ms. Szot cannot sustain claim of defamation based upon Mr. Wilson's statements to her because there was no publication. Defendant also maintains that Plaintiff's defamation claim based upon Llende's report and the recommendation of her termination must fail because the particulars concerning her termination were reasonably communicated among a limited set of high level managers within the corporation for a legitimate organizational purpose and, thus, were privileged. Lastly, Defendant asserts that the statements were true. Ms. Szot maintains that the circulation of Llende's report outlining the allegations of dishonesty and

falsification among her superiors and peers at Allstate is legally sufficient to sustain her claim of defamation. As evidence of the circulation, Ms. Szot has produced the "sign-off" sheet for her termination. Llende's report also indicates that its contents were circulated among managers within the company.

The Court believes that the statements made by Mr. Wilson to Ms. Szot in the presence of her supervisor as well as those contained in Mr. Llende's report and the "sign-off" sheet for her termination were privileged. The communications dealt directly with subject matter that was of mutual interest to the communicator and recipient for a reasonable employment-related purpose, the circumstances and alleged misconduct that served that basis for an agent's ultimate termination. *See Happy 40, Inc. v. Miller,* 63 Md.App. 24, 36, 491 A.2d 1210, 1216–17 (1985) (informing employees that plaintiff was discharged for suspicion of theft). Additionally, "[s]tatements made within the context of the employer-employee relationship in furtherance of a protection of the employer's property have long been accorded a qualified privilege." *Exxon Corp., USA v. Schoene,* 67 Md.App. 412, 421, 508 A.2d 142, 147 (1986). *See also Sindorf,* 276 Md. at 601, 350 A.2d 688 (holding statements accusing employee of theft enjoyed qualified privilege); *General Motors Corp. v. Piskor,* 277 Md. 165, 172–73, 352 A.2d 810, 815–16 (1976) (same); *Causey v. Balog,* 929 F.Supp. 900, 914–15 (D.Md.1996) (finding interrogation of employee about missing equipment was privileged), *aff'd* 162 F.3d 795 (4th Cir.1998).

**4.** Section 5–423 of the Courts and Judicial Proceedings Article of the Maryland Code provides qualified immunity to employers for communications made to prospective employers or governmental entities regarding an employee's performance or termination. Md. Code Ann., *Cts. & Jud.Proc.,* § 5–423 (1998). As the alleged defamatory statements did not occur in the statutorily prescribed circumstances, the statutory immunity is inapplicable to the instant case.

The allegedly defamatory statements bore directly on Allstate's concerns that Ms. Szot was improperly giving discounts off its premiums.

 Thus, the burden shifts to Ms. Szot to overcome Allstate's qualified privilege. "A qualified privilege will exist only if exercised in a reasonable manner and for a proper purpose" and may be lost if abused, such as where, "(1) the publication is made with malice, that is, with knowledge of falsity or reckless disregard for truth; (2) the statement was not made in furtherance of the interest for which the privilege exists; (3) the statement is made to a third person other than one 'whose hearing is reasonably believed to be necessary or useful to the protection of the interest[,]' and (4) the statement includes defamatory matter not reasonably believed to be in line with the purpose for which the privilege was granted." *Mareck v. Johns Hopkins University,* 60 Md.App. 217, 224–25, 482 A.2d 17, 21 (1984) (citations omitted). The requisite malice to overcome an employer's qualified privilege can be overcome by, "evidence tending to show actual malice, as where the words unreasonably impute crime, or the occasion of their utterance is such as to indicate, by its unnecessary publicity or otherwise, a purpose wrongfully to defame the plaintiff ... [o]r, ... showing that the publication contained matter not relevant to the occasion...." *Gohari,* 363 Md. at 63, 767 A.2d at 332. Ms. Szot has not produced any evidence by which a jury could reasonably infer that the statements made in the course of her termination satisfied any of these situations. No reasonably jury could find that Mr. Wilson was acted with reckless disregard for the truth, or otherwise abused the conditional privilege, in relying on a corporate security officer's report and allowing Ms. Szot's immediate supervisor to hear the grounds for her termination. Allstate has produced deposition testimony evidencing that the circumstances and reasons behind Ms. Szot's termination were not communicated beyond those needed to approve her discharge despite the repeated inquires of other agents. The evidence produced by Ms. Szot only supports this conclusion. The sign-off sheet for Ms. Szot's termination only includes the signatures of individuals from Corporate Security, Employee Relations, the Assistant Vice–President of Human Resources, the Functional Officer, and the Territorial Vice–President. Llende's report was sent to Daryll D. Fletcher (the Regional Vice–President), Ben Tarver from Corporate Security, Steve Gibson, George Giles, and Scott McIntosh. Ms. Szot has not produced any legally relevant competent evidence to support a finding that it was not reasonably necessary for these individuals to be informed of the circumstances and reasons underlying the recommendation for Ms. Szot's termination before granting their approval. Accordingly, the Court finds that Ms. Szot has not sustained her burden of overcoming Allstate's privilege.

Ms. Szot also cites to the "rumor mill" generated among Allstate agents concerning her termination as a basis for imputing defamation liability onto Allstate. "It is true that it is generally held that an employer may be held liable for an act of defamation committed by its employee during the course of the latter's employment." *Reaves v. Westinghouse Elec. Corp.,* 683 F.Supp. 521, 526 (D.Md.1988). However, Ms. Szot has not presented that any evidence, either by way of affidavit or deposition, to contradict Semones' testimony that he never informed other Allstate agents of the grounds for Mr. Szot's discharge. Plaintiff's references to the "rumor mill" created by her former peers' sheer speculation as to the grounds for her termination, without more, is insufficient to establish a claim of defamation against

Allstate, the employer. *See Bagwell v. Peninsula Regional Medical Center,* 106 Md.App. 470, 510, 665 A.2d 297, 317 (1995); *Reaves,* 683 F.Supp. at 526. *Compare Elicier v. Toys R Us, Inc.,* 130 F.Supp.2d 307, 311 (D.Mass.2001) ("[T]he mere fact that some Toys 'R' Us employees may have heard a rumor that Elicier was terminated for dealing drugs does not prove reckless publication" by the employer) *with Gay v. Affourtit,* 76 F.Supp.2d 517, 517 (S.D.N.Y. 1999) (finding plaintiff may establish defamation claim against fellow employees for maliciously fabricating and circulating false rumors that impugned his professional judgment and character). Accordingly, the Court grants summary judgment in favor of Allstate on the claim of defamation as well.

## III. *CONCLUSION*

For the reasons stated above, the Court will grant summary judgment in favor of Allstate. An Order consistent with this Opinion will follow.

### *ORDER*

For the reasons stated in the accompanying Memorandum Opinion dated August 24th, 2001, IT IS this 24th day of August, 2001 by the United States District Court for the District of Maryland, hereby **ORDERED:**

1. That Defendant's Motion for Summary Judgment [15–1] BE, and the same hereby IS, **GRANTED;**

2. That the Clerk of the Court **CLOSE** the above-captioned case, and

3. That the Clerk of the Court mail copies of this order to all counsel of record.